## No. 9546.

### ALEXANDER HILL vs. CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD COMPANY.

The legislature of the State has vested the city of New Orleans with authority to regulate the use of her streets and to authorize the establishment thereon of railroads operated by steam. The ordinance of 1871, No, 1031 A. S., authorizing the N. O. Jackson and G. N. R. R. Co. to use steam on its track on St. Joseph street, was a valid exercise of that power.

The act of the General Assembly, No. 78 of 1870, never went into effect by reason of non-compliance with the terms of its concluding section; and even if it had gone into effect the proper construction of it would be that it was a mere negative of authority to use steam on St. Joseph street, under said act, but that it did not prohibit the city from granting such authority.

In absence of any allegation or proof that defendant's railroad is improperly constructed or conducted, or uses defective machinery, or, in any way, occasions injury not incident to the prudent and lawful exercise of its right, plaintiff is not entitled to the injunction or damages claimed.

An action of damages will not lie for merely consequential injuries resulting from the pursuit of a business and exercise of rights, lawful in themselves, when they are exercised with prudence and caution and in a manner to cause no unnecessary injury. Such inconveniences or injuries must be borne as the tribute of individual inconvenience to the general good.

Article 156 of the present Constitution is not applicable to this case.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus*, J.

*James D. Hill* and *W. B. Sommerville* for Plaintiff and Appellee:

1. The council of the city of New Orleans has the authority to grant to railroad companies the privileges of using the streets. Tilton vs. R. R. Co., 35 Ann. 1062; 27 Pa. 354.

2. Act No. 78 of the extra session of 1870 provides that the defendant company shall have the right of way for the purposes of its railway—provided, steam shall not be used as a motive power on Delord or St. Joseph street from Rampart street to the levee.

3.   The grant of power in the city charter is, by operation of this statute (Act No. 78)
withdrawn from the municipal authority and exercised directly by the State. 19 Pa.
299 ;· 27 Pa. 354.

4.   Act No. 78 did not require the express assent of the defendant company to make it oper-
ative.   The exercise of corporate powers under it is an acceptance of the same in all of
its parts.   32 Md. 27; 37 Md. 556; 11 Ind 104; 20 Ill. 661.

5.   The express assent of the defendant company to accept and be subject to the constitu-
tion of the State under which it lived is not required to make an act operative.

6.   The acquisition of the railroad by defendant from the late New Orleans, Jackson and
Great Northern Railroad, after the railroad within the designated limits was in full op-
eration, without objection from plaintiff, who stood by, cannot under the facts of this
case, operate an estoppel against him.   There could have been no preclusion, and no es-
toppel can be pleaded against a legislative prohibition.   27 Pa. 354.

7.   Acts of an individual or corporation, which are outside of legislative authority, may be
enjoined by one injured thereby; much more when said act is in violation of a legisla-
tive prohibition.

8.   The damages herein claimed are predicated on continuous wrongful acts, to which pre-
scription has no application.   Werges vs. Railroad, 35 Ann. 643; 7 Otto, 668.

*Farrar & Simonds* and *James Fentress* for Defendant and Appellant:

1.   Our authority to lay down railroad track:   Act of La. 1852, page 129, Charter Contract;
Ordinance 1621. approved December 11, 1869; and No. 1468, N. S., May 22, 1869.   To use
steam:   Ordinance 1031, Administration Series, August 16, 1871; Ordinance 8127, Ad-
ministration Series, November 9, 1882.

2   The city had power to pass above ordinances.

   (a)   By all the charters of New Orleans, prior to 1870, it is authorized to "regulate," etc.
the streets.   This necessarily implies the power to say what vehicles shall be allowed
and under what regulations.   Brown & Co. vs. Duplessis, 14 Ann. 855.

   (b)   The Act of 1870, granting new charter to city, expressly mentions locomotives in the
streets and makes plain the powers of city.   Sec. 12, and Sub-Secs. 2 and 11, Sec. 34.

   (c)   The legislature, by general Act of 1852, authorizes railroad companies to organize
and build railroads anywhere in the State, with only two exceptions:

1.   Not to run over dwelling houses, etc.   Voorhies' Revised Statutes, Sec. 705.

2.   Nor through streets of municipality without the consent of Council, which once granted
shall not be withdrawn.   Ibid, Sec. 689; Act approved March 12, 1852, Sec. 7.

Here two things are manifest:

   (a)   That the State grants them power to run anywhere in the State with the above con-
ditions.

   (b)   That the State expressly leaves municipal corporations the right to say, whether or
not railroads shall be allowed in their streets.

The N. O. J. and G. N. R. R. was organized under this general law.   See Act of La., ap-
proved April 22, 1853.

The City Ordinance 1031, Administration Series, gives consent of city, and so the right and
power is complete, both from State and city to the New Orleans, Jackson and Great
Northern Railroad.   And defendant derives its rights by purchase under mortgage and
decree of U. S. Courts.   See Act of La. 89 of 1878.

The opinion of the Court was delivered by

FENNER, J.   Plaintiff, an extensive property holder on St. Joseph
street in this city, averring that the defendant, " without any warrant
of law or color of lawful authority," is and has been engaged in run-

ning steam locomotives and heavy trains of freight cars along railroad track operated by it on said street, thereby obstructing the ordinary use of the street, polluting the atmosphere with clouds of smoke, soot and dust, shaking and cracking the walls and ceiling of his houses, thus injuring the same and impairing the value of his property, and establishing a nuisance, brings this action for an injunction to restrain defendant from running freight trains and steam engines along said street, and also to recover five thousand dollars as damages for injury sustained.

Defendant, for answer, pleads the general issue, and further specially denies the damage and avers that it was "duly authorized by acts of the legislature and by city ordinances to use and operate its trains on the said railroad track on St. Joseph street."

From a judgment perpetuating the injunction and awarding $1,500 damages, the defendant has appealed.

The substantive ground of the relief sought by plaintiff lies in the allegation that defendant is acting "without any warrant of law or color of lawful authority."

We have recently very considerately determined that "the legislature has the power to authorize the building of a railroad on a street of a city, and may directly exercise this power or devolve it upon the local or municipal authorities." Harrison vs. R. R. Co., 34 Ann. 462; Werges vs. R. R. Co., 35 Ann. 641; Tilton vs. R. R. Co., Id. 1062.

If, therefore, the defendant had, as alleged in its answer, lawful authority derived directly or indirectly from the legislature, to construct and operate the road complained of, the broad injunction applied for by plaintiff necessarily falls.

The petition contains no allegations tending to show that the railroad is improperly constructed, or improperly conducted, or uses defective machinery or in any way occasions injury which, by the use of proper means and care, might be avoided.

Such allegations might sustain a partial injunction tending to remedy the particular faults or defects complained of, but could not support the injunction prayed for, which could rest only on the ground that defendant was without lawful right to operate its steam railway at all, on said street.

As this is the most important question we shall first determine it, as conclusive of the right to the injunction.

The defendant sets up, as its authority for using steam on its railroad on St. Joseph street, an ordinance of the city of New Orleans, No. 1031, A. S., approved August 16, 1871, which expressly grants such

authority, and under which defendant and its authors have continuously operated its steam trains from the year 1871.

Plaintiff claims that this ordinance was *ultre vires* and of no effect, by reason of its contravention of the terms of a law of the State, being Act No. 78 of 1870, entitled "an Act relative to the New Orleans, Jackson and Great Northern Railroad Company" in the following terms:

"Whereas, it is essential to the commercial prosperity of the State of Louisiana that the cost of transportation of freight should be reduced to the lowest point practicable; and

"Whereas, there now exists an almost impossible break of about a mile between the Mississippi river * * and the depot and present *terminus* of the road * * ; therefore,

"SECTION 1. Be it enacted, etc., That it shall be the duty of the board of directors of the N. O., J. and G. N. R. R. Co., within two years from the approval of this Act, to extend their track by the shortest and most practicable streets, from their present depot to the Mississippi river, along said river from the Pontchartrain railroad depot, by the shortest or most practicable streets, to the elevator; thence to Louisiana avenue and back again, by the shortest or most practicable streets, to the N. O., J. and G. N. track, and to that end power and authority is hereby granted and conferred on them to construct and maintain such a line of track and use the same for conveyance of freight and passengers; provided, that steam shall not be used as motive power on Delord or St. Joseph streets, from Rampart to the levee.

"SEC. 2. Be it further enacted, etc., That this Acr shall take effect as soon as the directors of said corporation so amend their rules and regulations relative to passengers as to comply with the requirements of the 13th article of the Constitution of this State; a certificate to that effect to be filed in the office of the Secretary of State."

To the results claimed by plaintiff as flowing from this Act, defendant opposes two objections, viz:

1st. That under the terms of the concluding section, the Act never went into effect, because the amendment of the rules therein required was never made and the certificate to that effect was never filed in the office of the Secretary of State.

2d. That, in any event, the proper construction of the Act is a mere negation of any authority, *under said Act,* to use steam as a motive power on St. Joseph street, and that it does not and was not intended to prohibit the city of New Orleans from granting such power.

There can be no question that the general legislation of the State,

prevailing from an ancient date, had vested the city of New Orleans with power to authorize the laying of railroad tracks in her streets and to authorize the use of steam conveyances thereon.

This results from the language of her various charters, even prior to that of 1870, which authorized the corporation to regulate "vehicles of every description" and "to determine through what streets the same shall pass;" from the Act of 1852, providing "no railroad, plank road or canal shall be constructed through the streets of any incorporated city or town, without the consent of the municipal council thereof;" and, to place the legislative meaning beyond doubt, from the city charter of 1870, adopted a few days before the Act 78 above referred to, which expressly mentions locomotives as among the subjects of regulation. Brown vs. Duplessis, 14 Ann. 842; Harrison vs. R. R., 34 Ann. 462; Werges vs. R. R., 35 Ann. 641; Tilton vs. R. R. Co., Id. 1062, in all of which cases this power of the city was expressly recognized.

It follows that, unless the legislative act referred to restrained the exercise of this power with reference to St. Joseph street, the city ordinance of 1871, conferred upon defendant full warrant of law to operate its road on that street by steam.

Now, by ordinances Nos. 1468 and 1621 of 1869, the city had already authorized the defendant to lay its track on St. Joseph street, but those ordinances contained the *proviso* that steam should not be used on that street or on Delord street.

This prohibition was, no doubt, the cause of the application to the General Assembly for further legislation which resulted in the Act of 1870. Doubtless, the General Assembly, being informed that the city had refused permission to use steam on St. Joseph and Delord streets and being unwilling to interfere with the discretion of the city autorities in regard to this subject, saw fit to impose the same restriction upon its own grant.

This *proviso* robbed the act of all benefit to the defendant's author, the New Orleans, Jackson and Great Northern Railroad Company, and hence no steps were taken to carry it into effect, and it never went into effect for any purpose.

The company never amended its rules or filed a certificate to that effect in the office of the Secretary of State, which, by the terms of the act, were conditions precedent to the laws taking effect.

The law, therefore, remained a dead letter. The company never acted under it in any respect. The tracks required to be built, within two years, from the Pontchartrain depot to the elevator, and thence to

Louisiana avenue and back to its depot, were never constructed and nobody ever complained of their non-construction.   The company, the city and the State seem to have concurred in considering the act as of none effect.   In 1871, the company again applied to the city for permission to use steam on St. Joseph street and it was granted by ordinance No, 1031, A. S.   Thereupon, the company commenced operating its road by steam, and has so continued ever since without interference from any public authority; and it was only in June, 1880, nine years afterwards, that the plaintiff, though he had been all the time a property owner on said street, bethought himself of judicially questioning defendant's authority by filing this suit.   In the meantime the road, with all its franchises, had been transferred from the New Orleans, Jackson and Great Northern Railroad Company to the purchasers, under a public judicial sale in foreclosure of a mortgage.   These purchasers were organized into a corporation under the title of the New Orleans, Jackson and Northern Railroad Company by an act of the General Assembly, approved March 8, 1877.

This latter corporation was subsequently consolidated with the Mississippi Central Railroad Company; and by act of the General Assembly No. 89 of 1878, these consolidated companies were organized into the Chicago, St. Louis and New Orleans Railroad Company, the present defendant, with full recognition of its succession to the rights, privileges and franchises of the former corporation.

Now, during all this period the various companies were publicly and without dispute, operating steam on St. Joseph street, and yet the General Assembly in dealing with them in these several acts, raised no question as to their right.

We consider it thus fully established that all parties considered the *proviso* of the Act of 1870 as inoperative.

Indeed, we do not see how a different conclusion could be reached.

The Constitution or general laws provide for the time when legislative acts shall take effect, in absence of special provisions on that subject in the acts themselves.   But no one has ever questioned the legislative power to fix the time at which, and the conditions under which, a statute shall go into effect, by provision in the act itself; and when it has exercised this authority, it must be respected, and the act does not take effect until such time has arrived or such conditions have been complied with.

Thus it has been decided that a statute passed to take effect only on a future fixed day, has no force whatever for any purpose until such day arrives.   Price vs. Hopkins, 13 Mich. 318.

Here, the legislature provided, in unambiguous terms that the Act of 1870 should only take effect on the happening of certain explicit conditions which have never happened. How can it be said that the law has ever gone into effect? If the company were claiming a privilege by virtue of such law, would it not be denied on showing that the condition had not been complied with? And must not the same rule apply when, by virtue of such law, an obligation or restraint is asserted against the company?

It is no answer to say that the assent of the company to accept and abide by the Constitution of the State is superfluous and unnecessary.

If it were a mere question of acceptance by the company, the answer might have force. But it is more than this; it is a question whether the law has ever taken effect. Acceptance by the company, however explicit, would entitle it to no rights and subject it to no obligations under the act, unless the act had gone into effect, because it requires two to make a bargain and the State's assent is wanting so long as the conditions to which she chose to subject it have not happened.

This we think conclusive in itself.

But, on broader grounds, we are fully satisfied that defendant's construction of the law is correct, even if the act had taken effect.

Considering the general policy of the State with reference to leaving the control of her streets to the city of New Orleans, and especially the charter of 1870, passed almost contemporaneously; considering the motives and purposes of the act and the conditions existing at the date of its passage; and considering the manifest interpretation of the act adopted by all parties, immediately after its passage and ever since, we are perfectly satisfied that the sole motive for the insertion of the *proviso* was the fact that the city had refused permission to use steam on the streets referred to; and that its sole meaning was to deny to the company the right to claim such privilege under the act and without consent of the city.

To hold otherwise would lead to the absurd consequences: 1st. That while leaving the city full power to permit the use of steam on any other street, the legislature had exempted these particular obscure streets therefrom; 2d. That, even on these streets, the city might grant the right to use steam to any person or corporation other than this company, to which alone the restriction applies.

On every ground, we are satisfied that the Act of 1870 operated no restriction on the power of the city to authorize defendant to use steam on St. Joseph street; and that the ordinance of 1871 constituted defendant's full warrant of law for that purpose.

On the question of damages, we have already noted the entire absence of any allegations in plaintiff's petition laying any other legal basis of defendant's liability for damages except the charge that it was operating its road without lawful authority.

The evidence is equally deficient of proof that the defendant is guilty of any fault in the construction or operation of its road or in the machinery used, or occasions any injury which could be avoided or which is not necessarily incident to the prudent exercise of its right.

That some inconvenience is occasioned to plaintiff by the noise of the trains and by the smoke and soot of the engines (which, however, are shown to be as nearly smokeless as any suited to the purpose) and by the jarring of the houses, cannot be questioned. So it may be possible that the price of property on the street may have been somewhat impaired by the establishment of this railroad thereon, though it is evident that plaintiff's witnesses exaggerate the influence of this cause and ignore other causes which account in great measure for the depression.

But these are merely consequential injuries for which defendant, who is merely "doing a lawful act in a lawful manner," cannot be held responsible.

In England, the doctrine is unqualified, that "an action will not lie on behalf of a plaintiff who has sustained injury from the execution of powers and authorities given by an act of parliament, those powers being exercised with judgment and caution." 2d Addison on Torts, sec. 1040, and authorities there cited.

In those States of this Union whose constitutions contain restrictions on the power of taking property without compensation, the doctrine is subject to corresponding restriction, and where property is taken even with legislative authority, the party is entitled to compensation. What constitutes the "taking of property" is well discussed and authorities reviewed in the works of Cooley and Wood. See Cooley Const Lim. 4th ed., p. 676 et seq.; Wood, Nuisance, secs. 752, 753 et seq.

The best authorities agree that mere consequential injuries, not occasioned by fault or neglect but incident to the prudent exercise of the right conferred, are not included.

We have hitherto recognized the rule, saying: The defendant company, having established its lawful authority, "is entitled to the protection of the rule which exonerates a party from responsibility in damages for injury done to another in the pursuit of a legal right or in the performance of a lawful act, when such injury is not traced to or

caused by his negligence or culpable carelessness." Werges vs. R. R. Co., 35 Ann. 646.

In the language of another Court: "Every great public improvement must, almost of necessity, more or less affect individual convenience and property; and when the injury sustained is remote and consequential, it is *damnum absque injuria*, and is to be borne as part of the price to be paid for the advantages of the social condition." Lansing vs. Smith, 8 Cow, 149.

The injuries established by plaintiff are of this character and must submit to this rule.

The article 156 of the present Constitution of this State, has no application to the present case, and its construction is not involved.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and it is now decreed that there be judgment dismissing plaintiff's demand with costs in both courts.

Watkins, J., not having heard the argument, takes no part.