LECHE, J.
During the afternoon of October 2, 1914, defendants’ sawmill situated at Standard, La., was destroyed by fire, and Lorraine Dotson, who was at that time -engaged in the pursuit of his employment as assistant saw filer, on the third floor of the building, lost his life in the conflagration.
The present suit was brought by his widow, Mrs. Bertha R. Dotson, individually and as tutrix of two minor children, issue of her marriage with the deceased, for damages in the sum of $30,000. Her cause of action is pitched upon the ground that the fire was caused by the carelessness and negligence of the defendant, and on the further ground that defendant was negligent in not providing its building with fire escapes, as required by the provisions of Act 171, p. 289, of 1914. Her demand was first met by an ex *81 ception of no cause of action, predicated on the absence of any allegation of the facts upon which she based her conclusion to the effect that the fire was caused by defendant’s negligence, and on the further ground that section 4 of Act 171 of 1914 is unconstitutional inasmuch as it violates article 31 of the Constitution, and that said act is not self-operative and not alleged to have been made operative by the state labor commissioner or state Are marshal.
These exceptions were overruled, and defendant then answered. It denied that the fire was caused by its negligence. It further denied that its sawmill building came under the provisions of Act 171 of 1914; but, in case the court should hold that it did, defendant then again averred, as it had, in its exception, that said Act 171 of 1914 was unconstitutional for the reason that it undertakes to create a statutory liability and is therefore unreasonable and oppressive, that it has two objects without their being set forth in its title, and that it is not self-operative and was not made operative by the labor commissioner or fire marshal. The case as thus stated was tried by the judge who rendered judgment in favor of plaintiff, individually, in the sum of $5,000, and in favor of the minors in the sum of $10,000.
Defendant took the present appeal and assigns‘the following errors on the part of the district court:
“1. In refusing to sustain the exception of no cause of action.
“2. In holding Act 171 of 1914 to be self-operative and that no notice or specification for location or number of fire escapes on defendant’s building was necessary.
“3. In holding that said Act 171 of 1914 was a penal statute in favor of an individual, and that plaintiffs could recover, regardless of whether or not the failure to install fire escapes was the proximate cause of the injury and -death of the deceased.
“4. In holding that the Legislature of a state could penalize one individual in favor of another; that is to say, to take the property of one individual and give it to another without just return, or as the result of some injury sustained by one party through the negligence of another.
“5. In holding that the accident was due to any fault or negligence of the defendant.
“6. In holding that the deceased did not assume any open risk or danger incident to his employment.
“7. In holding that said Act 171 of 1914 was not violative of article 2 of the Constitution of the state of Louisiana and the Fourteenth Amendment of the Constitution of the United States, and also in holding that said statute is not violative of article 31 of the Constitution of Louisiana.
“8. The judgment is excessive.”
Opinion.
Defendant’s exception of no cause of action is predicated on: (1) The failure of plaintiff to allege the particular facts from which she deduces that the fire originated through defendant’s negligence; pud (2) the uneonstitutionality of section 4 of Act 171 of 1914.
[1, 2] It is elementary that a plaintiff must allege in his petition all the facts which he must prove in order to establish his demand. The law, however, forces no one to do that which is impossible, and it therefore sometimes happens, where the facts are unascertainable by the plaintiff and are peculiarly within the knowledge of the defendant, that the law establishes in favor of the plaintiff, a presumption of the existence of such unascertainable facts, and the burden of proof is then shifted upon the defendant to show their nonexistence. In the present case, plaintiff charges that the sawmill building in which her husband was at the time engaged in the performance of his duties was, by the fault, carelessness, and negligence of the defendant, permitted to catch on fire and to be completely destroyed. Hence the preliminary question to be decided is whether plaintiff should have alleged the particular acts which defendant performed carelessly and negligently or the particular acts required by ordinary prudence and caution, *83 which defendant failed to perform, as causing the fire.
[3, 4] 1. Although the general rule of law is that a plaintiff who claims damages must allege and prove the facts necessary to establish the negligence of defendant, upon which he predicates his demand, it is equally a well-recognized exception to that general rule that, where the cause of the accident by which the damage was inflicted is more properly within the knowledge of defendant, the accident itself makes out a prima facie case, and the burden is upon the latter to show absence of negligence. Res ipsa loquitur. Lykiardopoulo v. N. O. & C. R. Light & Power Co., 127 La. 309, 53 South. 575; White v. Maison Blanche Co., 142 La. 265, 76 South. 708. According to R. C. L. vol. 11, p. 955, par. 13, there is much apparent conflict of authorities whether there arises a presumption of negligence on the part of the occupant of a building, where it is destroyed by a fire originating inside of it and in an unusual manner. If no such presumption exist, plaintiff should allege the particular facts from which the defendant’s negligence may be inferred; but if, on the other hand, there arises a presumption of negligence on .the part of a defendant who occupies the building and absolutely controls its use, from the mere fact that a fire has originated therein, then the proof of absence of negligence is upon the defendant, and there is no reason why a plaintiff should allege that which he is not called upon to prove. At page 954, par. 12, of the same volume, we- find:
“Since in the absence of statute to the contrary negligence or misconduct is the gist of the action to recover damages for setting or permitting the spread of fire, such negligence or misconduct is an essential element in the pleadings as well as in the proofs. In accordance with the general rule in actions based on negligence, an allegation of the defendant’s negligence. in general terms will, it seems, be sufficient without setting out the specific acts relied on as the basis of plaintiff’s action.”
[5] In the present case, the deceased, an employé of the defendant, was carrying out the duties of his employment in the place provided by his employer for the performance of such duties when he was suddenly overwhelmed and lost his life by a fire which was kindled out of his sight, in appliances under the control and in the presence of defendant’s agents. Under these circumstances, such an unusual fire must be presumed to have originated through defendant’s fault, and its cause is certainly more properly within the knowledge of defendant than of the plaintiff. We are therefore of the opinion that the doctrine of res ipsa loquitur most aptly applies to this case, and that the burden is upon defendant to clear itself of imputed negligence.
[6-9] 2. Defendant’s attack on the constitutionality of Act 171 of 1914 rests on the assertion that it creates a civil liability by one person or class of persons in favor of other persons, that no mention thereof is made in the title, and therefore that the provision creating such liability contravenes the provisions of article 31 of the Constitution. Defendant further contends that said act is not self-operative and not alleged to have been made operative by the state labor commissioner or the state fire marshal, and therefore that its provisions cannot be invoked against it in this case.
The title of the act is worded as follows:
“For the safety of persons from fire or panic in certain buildings, by providing fire escapes; by vesting jurisdiction for the enforcement of this act in the state labor commissioner under the supervision of the state fire marshal; and providing penalties for any violation of this act; and repealing all laws or parts of laws In conflict herewith.”
Section 1 in substance provides that every building in the state of Louisiana having more than two stories, and every building in which persons are usually employed above the second story, shall have one or more *85 fire escapes on the outside of said building as may be directed by the state labor commissioner, except in such cases as he may deem such fire escapes to be unnecessary, in consequence of adequate provisions having been already made for safety in event of fire or panic. Then follow specific directions as to what shall constitute efficient fire escapes.
Section 2 defines what shall constitute an adequate internal fire escape where it cannot be erected outside.
Section 3 provides for the approval of the fire marshal of buildings already erected, to be used for any purpose mentioned in the act, and of buildings hereafter to be erected for such purposes.
Section 4 provides:
“That the owner or owners of any of the buildings mentioned in the foregoing provisions of this act, who shall willfully fail or refuse to comply with the provisions of this act, or who shall willfully fail or refuse to observe the orders for the enforcement of this act, issued to said owner or owners by the state fire marshal or the state labor commissioner, shall be deemed guilty of a misdemeanor, and on conviction thereof, shall be punished by a fine, etc. * * * And in case of fire occurring in any of said buildings, in the absence of such fire escapes, as provided for in this act, the owner or owners aforesaid shall be liable for damages, in case of death or personal injury, the result of fire or panic in any of said buildings; and such action for damages may be maintained by any person now authorized by law to sue, as in other cases of loss by death or injuries.”
The purpose of the act, as clearly stated in its title, is to preserve the safety of persons from the dangers of fire and panic in certain buildings. The several provisions in the body of the act make it the duty of owners of buildings having more than two stories to erect fire escapes, and the specifications for such fire escapes are minutely detailed. The duty to erect such fire escapes is mandatory except where the state labor commissioner finds that such fire escapes are not necessary. We do not understand the act to say or to mean that the duty to erect fire escapes only arises or comes into existence after notice by the state labor commissioner or the fire marshal has been served upon the owner of the building, though it may be that, before -an owner may be criminally prosecuted, such notice should be served upon him. We are therefore clearly of the opinion that the duty to erect fire escapes is imposed upon owners of such buildings by the law itself, without action or intervention either by the state labor commissioner or the fire marshal, and to that extent the act is self-operative. The nonperformance of that duty then becomes negligence per se. Clements v. La. Electric L. Co., 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348. It seems equally clear to us that the provision of section 4 of the act, which does not create but only recognizes a right of action for damages, is constitutional and not in contravention of article 31 of the Constitution. If the last paragraph of section 4 were effaced and eliminated from the act, defendant’s alleged liability, resting upon the provisions of article 2315, C. C., would not thereby be affected or lessened.
Believing then that Act 171 of 1914 is self-operative to the extent that it creates an imperative duty upon owners of factory buildings of more than two stories to erect fire escapes for the safety of persons therein, and that the failure to perform such duty is negligence per se, and believing further that the provision of section 4 of said act only recognizes, without creating, a cause of action, and that such provision is germane to the object of the act and is covered by its title, we hold that the trial judge properly overruled defendant’s exception of no cause of action.
[10] The evidence in the record discloses that during the afternoon of October 7, 1914, Dotson, employed by defendant as assistant saw filer, was engaged in the performance of *87 Ms duties in the third story of defendant’s sawmill building, in the place provided by his employer for that purpose; that shortly before 6 o’clock fire originated between the first and second floors in the lower boxed part of the shaft in which the band saw was being operated. The mill proper where the timber was sawed was on the second floor of the building, and the inclosed pulleys around which the saw was carried were suspended, one between the second and third floors, and the other between the first and second floors where the fire was kindled.
The flames were accompanied with a heavy dark smoke, which rose through the open shaft to the third story and spread with such rapidity that the hose and other apparatus for quenching fires could not be effectively used. Dotson was then in the filing room on the third floor, and, cut off! from his only means of escape, a stairway inside the building, he was no doubt asphyxiated and was burned to death. The building was not provided with outside fire escapes as required by Act 171 of 1914; hut defendant attempted to show that Dotson might, notwithstanding the lack of fire escapes, have saved himself if he had exercised ordinary prudence and at once heeded the alarm of fire sounded by the mill whistle and' the noise and confusion made by the other employés in their attempt to check the fire. .There was no designated method of sounding fire alarms, and, so far as the record show's, the employés of defendant had never been instructed as to the nature of warnings to be given them in case of fire. So that the mere blowing of the whistle, assuming that it was blown in time (which is not shown with any degree of certainty), might have been very reasonably understood to be a signal to stop and start the machinery of the mill, for which purpose it had generally been used. The noise incident to the fire does not appear to have been greater than that usually accompanying the operation' of the mill, and it is not pretended that any special warning was communicated by any one to Dotson in his workroom on the third floor.
Our appreciation of the evidence in this case as to the origin of the fire is that defendant’s mill was being operated in the usual and customary manner; that defendant used the same appliances as are generally used in similar' sawmills; that it exercised ordinary care and prudence in operating such appliances; and that the cause of the fire, most probably the result of heat generated by friction near the lower pulley around which the saw was carried, cannot be imputed to any negligence on the part of defendant. But we must assume that the proximate cause of Dotson’s death was the. negligence of defendant in not providing him with the means of saving himself by fire escapes as required by the provisions of the act of 1914. Defendant might contend that", even if there had been fire escapes, Dotson would have lost his life. That may be true, but its negligence in not erecting the fire escapes, as required by law, imposed upon it the burden of showing beyond doubt and with reasonable certainty, which it has failed to do, that the proximate cause of Dotson’s death was other than its negligence in not performing that duty. We therefore conclude that defendant is liable in damages for the death of Dotson.
[11,12] In its assignment of errors, defendant charges the trial court with various errors, some of which do not appear in the record, and to pass upon them could afford it no relief. The proposition that, though defendant violated its legal .obligation to furnish Dotson with the proper fire escapes, he nevertheless assumed the risk incident thereto, is in our opinion not tenable.. In the first place, the danger was neither obvious nor even incidental to his employment, and, in the second place, to so hold would be to render nugatory the prohibition against agreements by which employés might waive *89 all damages against an employer for his negligence. See Roff v. Summit Lbr. Co., 119 La. 571, 44 South. 302.
[13] Defendant also complains that the amount of damage allowed to plaintiff and her two children, $5,000 each, or a total of $15,000, is excessive. The deceased was 23 years of age, and was earning at the time of his death $2.50 per day, or $65 per month of 26 working days. Plaintiff contends that her deceased husband had every reasonable prospect of earning much larger wages. He was engaged in work requiring great skill, although he had barely reached manhood, and it is logical to assume that his earning capacity would have increased as he grew older in years and experience. We believe the award was fair and see no reason to modify the findings of the trial court.
Judgment affirmed, at the cost of defendant and appellant.
PRO YO STY, J., absent on account of illness, takes no part;
O’NIELD, J., concurs in the decree, but not in the ruling that the doctrine res ipsa loquitur applies to this case; the ruling on that question being, in his opinion, unnecessary when the court found that the plaintiff’s allegation that the defendant had violated the fire escape law set forth a cause of action.