BRUNOT, J.
 

 This is a suit for damages. The sum claimed is $27,948.83. The petition alleges that certain buildings, together with their contents, the property of the plaintiff John M. Mays, were totally destroyed, and other buildings and personal effects, owned by said plaintiff, were damaged by a fire caused by the fault and negligence of the defendant. Eight insurance companies, as subrogees of the insured, joined in the suit, as plaintiffs, each claiming the sum paid by them to the insured under the terms of their respective policies. The prayer is for judgment for the sum claimed and that the subrogees’ claims be paid by preference.
 

 The defendant .excepted to the petition upon the ground of vagueness. The exception was maintained, the plaintiffs amended their petition in compliance with the court’s ruling, the" defendant answered the suit, the case was tried, and judgment was rendered in favor of the plaintiffs and against the defendant for $25,128.64, with legal interest thereon from March 7, 1929, until paid, and otherwise as prayed for in the petition.
 

 A motion for a new trial, or rehearing was filed, heard, and overruled, and defendant obtained the proper order and perfected a suspensive appeal from the judgment.
 

 The record is voluminous. It contains, in addition to the pleadings, etc., approximately 700 pages of oral testimony. Aside from the issue as to what extent, if any, the showing made by the plaintiffs shifts the burden of proof upon the defendant, the case presents only questions of fact.
 

 At the outset we must remember that this is not a suit for the nondelivery or damage to goods or merchandise, nor is it a suit, to recover for personal injuries received..by a passenger while in transit. Therefore, neither the settled jurisprudence with respect to the former, nor the jurisprudence with respect to the latter, as it is clarified by- the opinion in the Cusimano Case, 170 La. 95, 127 So. 376, can be considered as controlling in this case, because it is well known that electricity of high voltage is an inherently dangerous agency. This is not true of an ordinary carrier of passengers or freight.
 

 The defendant operates under a franchise, and under contract with its patrons. It distributes electricity to its patrons from a high-voltage current, which is stepped down through transformers to safely meet the needs of its consumers. Where one is engaged in the manufacture and distribution of an inherently dangerous agency, he is charged with the duty of exercising the utmost degree of caution, to the end that harm may not come to others. Keeping this duty of the defendant in mind, we will consider the contention of the litigants and will summarize our appreciation of the facts.
 

 
 *371
 
 Plaintiff Mays owned and operated a store and warehouse. I-Iis residence was situated near the store. The buildings were electrically lighted by current furnished, under contract, by the defendant. During the early part of the night of September 29, 1928, the store and its contents were totally destroyed, and the other buildings and an automobile were damaged by fire. The plaintiffs contend that the fire was caused by high-tension electricity entering the store building through the primary wires because of the negligence of the defendant. The defendant first contended that the fire was of incendiary origin, but during the course of the trial it abandoned that contention and rested its defense upon its denial of negligence and its averment that the fire which destroyed the store melted • its high-voltage wire and caused it to come in contact with the secondary wires, thereby creating a short circuit.
 

 . The unrebutted testimony is that, for several hours during the afternoon preceding the fire, the defendant’s distribution system, in that neighborhood, was in such an abnormal condition as tó cause several residents who had occasion to light their dwellings to turn off their lights. Preceding the fire, • Mr. Mays’ night watchman at his gin-house observed the emission of flashes from the ginhouse lighting sys'tem and reported this fact to his employer. A very short time thereafter fire was discovered in the store building. Some one in an automobile first discovered the fire in the store and gave the alarm. Other persons in a nearby automobile drove to the store and observed that the wall of the building above the windows was on fire' along the line of the installed lighting wires, and that lightning-like flashes were being emitted from those wires and their connecting electrical fixtures. Parts of these fixtures were found in the débris of the burned building after the fire. They were offered in evidence and sent up to this court as exhibits. There is unrebutted testimony that these fixtures were subjected to a high-tension electric current.
 

 It is shown that if a transformer and the lines leading to it are in good condition, it takes the high-tension current from the primary wire and reduces the voltage in the ratio of one hundred to one. Plaintiffs’ expert testified that transformers will pass electric current of destructive voltage into the premises served if the leads from the primary and secondary wires are defective, or if they are in contact with the steel box housing the transformer. This testimony is not rebutted unless it be by inference. On the other hand, there is testimony that, after the fire, the transformer that served the building which was burned was intact except for fire damage to the box which inclosed it, but it is not shown that the leads into and out of the transformer were in good condition immediately prior to or at the time of the fire. There is testimony that a radio which was in operation somewhere in the vicinity of the fire was not affected thereby, but it is not shown at what particular time and for what length of time the radio was in operation. It is shown that when the fire had gained great headway, it melted the primary wire and an appalling condition' ensued until the high-tension current was cut off.
 

 It will serve no purpose to review the testimony further. As a whole it convinces
 
 *373
 
 us that, by a fair preponderance of the evidence, no reasonable hypothesis as to the origin of the fire is shown other than that it was caused by the overloading of the secondary wires leading into Mr. Mays’ store building, either because of some defect in the transformer through which that building was served with electricity, or because the primary and secondary wires were in contact with the steel box housing the transformer, or were in direct contact with each other.
 

 The transformer and its lead wires were the property of the defendant and under its exclusive control. As defendant is charged with the exercise of the utmost caution in the effective maintenance of the instrumentalities by means of which it distributes electric current to its patrons, it is liable for injury resulting from neglect, or any other omission to fully perform that duty.
 

 The testimony satisfactorily shows that .the judgment awards the actual amount of the damages proven. It is therefore decreed that the judgment appealed from be and it is affirmed, with costs of the appeal.