**KENDALL et al. v. PEOPLE'S GAS & FUEL CO., Inc.***

No. 4918.

Court of Appeal of Louisiana.
Second Circuit.
Jan. 9, 1935.

Barksdale, Warren & Barksdale, of Ruston, for appellants.

Pugh, Grimmet & Boatner, of Shreveport, and Elder & Elder, of Ruston, for appellee.

MILLS, Judge.

Plaintiffs are the owners of a house and lot facing south on East Arizona avenue in the town of Ruston. The space between the front property line and the curbing, used as a sidewalk, is owned by the municipality. Civil Code, art. 458.

This space is partly paved with the usual cement strip which leaves an unpaved portion or neutral ground about ten feet wide between the cement and the curb. In this neutral ground throughout the length of the street the property owners have planted oak trees, now about thirty years old, and of such a size that their limbs meet across the street. Three of these trees stood in front of plaintiffs' property, one near the east line, the next within a few feet of the paved driveway, which is on the west side of the house, and the third in the small unpaved space between plaintiffs' driveway and that of their neighbors. In addition to their beauty and esthetic value, they served a practical purpose in shading the house, porch, and lawn in the summer afternoons. The presence of the trees appreciably increased the market value of plaintiffs' property.

The middle tree, after deteriorating throughout the summer and fall of 1929, died,

and was cut down in the spring of 1930. The one between the driveways became seriously affected during the summer of 1932; the few green leaves remaining on it during the hot months giving little shade and comfort. It expired in the fall, and was removed in April, 1933.

Plaintiffs were unaware of the cause of the loss of these trees until November 4, 1932. On that date children playing in front of the house noticed sand or earth bubbling up in the neutral ground. Their efforts to unearth the expected doodle bug proving futile, one of the boys dropped a lighted match upon the agitated section. The resulting flame aroused the Kendalls, who notified the gas company. They immediately sent a representative, who dug down until a leak in the service pipe was disclosed. This service pipe connects the house of plaintiffs with the main of defendant, which is located beneath the paving, in the middle of the street.

On May 31, 1933, plaintiffs filed this suit, demanding of the gas company $2,000 for damages to and depreciation of the value of their property, alleged to be the "result of the negligence of the Peoples Gas & Fuel Company, Incorporated, in wrongfully allowing the leakage and escape of natural gas from the service pipe."

Defendant, in bar of the action, pleaded the prescription of one year. It also excepted that the petition did not state a cause or right of action because the only allegation of negligence, which we have quoted above, is a mere conclusion of the pleader, unsupported by any statement of fact.

The plea and exception were not passed on in limine, but were expressly overruled in the final judgment, which rejected plaintiffs' demand on the merits. From this judgment plaintiffs have appealed, and defendant has answered, praying that it be affirmed in so far as it rejects, on the merits, the demand, and amended in so far as it overrules the plea and exception. The defendant wishes to retain the judgment in its favor on the merits and at the same time have that judgment amended so as to dismiss plaintiffs' suit on the plea and exception, a manifestly inconsistent and impossible decree. We will therefore not pass upon the plea and exception, but confine our review of the case to the judgment on the merits.

Defendant denies the material allegations of plaintiffs and in an amended answer, in the alternative, pleads contributory negligence, in that the service line was owned and installed by plaintiffs, whose duty it is to maintain and inspect it, defendant being under no obligation in regard to same until a break or leak is reported to them; that plaintiffs were negligent in not sooner discovering and reporting the leak.

On February 9, 1925, by proper ordinance, T. L. James was granted a franchise for the distribution and sale of natural gas in the town of Ruston. It provides that "the grantee shall make all taps in the mains and the consumers shall run their service lines from said tap. No charge whatever is to be made to the consumers by the grantee for tapping their main." It is proven that the service pipe from the main to the house was installed by a plumber employed and paid by the property owners, and that the connection at the main was made by defendant.

The franchise further provides that in the construction, operation, and repair of its distributing system the grantee shall use every reasonable and proper precaution to avoid inflicting damages or injury to persons or property, and shall hold the grantor "harmless from any claim for damage, injury, loss or expense caused by the negligence of grantee." It provides further that "such operations shall be under the supervision of the City authorities and subject to their inspection." It is not disputed that defendant company is operating by assignment under this franchise.

Defendant denies that the trees were killed by escaping gas. It shows by expert testimony that their virility was greatly lessened by the curtailment of their food area by the pavement of the street, sidewalk, and driveways; that their deterioration over a number of years is shown by the rings in the preserved stump. Plaintiffs' expert testified that the element in gas fatal to vegetation is monoxide. A chemist who analyzed natural gas for defendant says that it contains no monoxide or other gases injurious to plants. Monoxide is found in large quantities in manufactured gas. A severe drouth prevailed in Ruston within the period of the decline of these trees. On the other hand, it is shown that the soil in the area affected was unusually hard and caked; that vegetation and shrubbery would not grow in it; that, after the leak was repaired, the remaining tree regained its vigor, and vegetation and shrubbery flourished. We do not disagree with the trial judge's finding of fact that the gas killed the trees.

At the outset, defendant contends that, assuming the existence of the other elements of liability, a property owner cannot recover for

damage caused by the death of trees standing and growing on public property.

Plaintiffs base their claim on two theories: First, that an abutting property owner has a servitude in the use of trees in the street as well as in the use of the street itself. Servitudes in this state are governed by our codal provisions; we find no mention in them of a servitude of shade. We can find no case which disputes the right of an owner to cut down trees growing on his own land. To the contrary, an adjacent owner can compel the removal of limbs which extend over his premises. If an abutting owner enjoyed a servitude in the shade trees along the sidewalk, the city would be powerless in many cases to widen or improve the streets.

In Tissot v. Great Southern Tel. & Tel. Co., 39 La. Ann. 996, 3 So. 261, 262, 4 Am. St. Rep. 248, it is held: "There is no doubt that the streets and sidewalks of a city are not subject to any proprietary right or interest on the part of abutting proprietors"—citing Irwin v. Telephone Company, 37 La. Ann. 67, and Hill v. Railroad Company, 38 La. Ann. 606.

The Tissot Case holds further that, within the limits of the street which extends over the space between the front line of the property holders on both sides, the city may cut down trees and dig up the earth for any proper purpose. But an abutting owner has a special interest in a street apart from that of the general public.

In Donahue v. Keystone Gas Company, 181 N. Y. 313, 73 N. E. 1108, 70 L. R. A. 761, 106 Am. St. Rep. 549, it is held that, though an abutting property owner owns no part of the street or sidewalk, he has by virtue of proximity special and peculiar rights not in conflict with the general right of the public, in the nature of easements such as access light and air, and including all the advantages which spring from the situation of the abutter's land. One of these advantages is the enjoyment of the shade and beauty of trees planted in the sidewalk in front of his property. While this right is subordinate to the right of the municipality to make any change for the benefit of the general public, it entitles the abutting owner to protection against negligent or willful destruction at the hands of third parties. This is so whether the ownership of the fee to the street is in the city or the property owner. This is the generally accepted rule in other jurisdictions, and is founded upon reason and justice. There is no reason why a property owner should not recover for the damage peculiar to him and his property, caused by the willful act or negligence of a third party. Such a loss is separate and distinct from that of the public generally. He is entitled to recover to the extent that the value of his property has been peculiarly and materially decreased. Southern Bell Tel. Co. v. Francis, 109 Ala. 224, 19 So. 1, 31 L. R. A. 193, 55 Am. St. Rep. 930; Remington v. Walthall, 82 Kan. 234, 108 P. 112, 31 L. R. A. (N. S.) 957; Norman Mill. & Grain Co. v. Bethurem, 41 Okl. 735, 139 P. 830, 51 L. R. A. (N. S.) 1082; Daily v. State, 51 Ohio St. 348, 37 N. E. 710, 24 L. R. A. 724, 46 Am. St. Rep. 578; Brown v. Asheville Elec. Light Co., 138 N. C. 533, 51 S. E. 62, 69 L. R. A. 631, 107 Am. St. Rep. 554; Coles v. People's Gas Co., 109 N. J. Law, 428, 162 A. 405.

We find nothing in our jurisprudence inconsistent with the above. In City of New Orleans v. Wire, 20 La. Ann. 500, the briefs show that this identical question was passed upon. In that case Connell, a paving contractor, in the name of the city and for its benefit, sued defendant for the price of block laying of the street in front of her property. Defendant reconvened for the value of six trees unnecessarily removed by Connell. These trees were on public property, being planted along the edge of the banquette. The court said: "From the evidence, we are satisfied that the removal of the trees was unnecessary, and their value is the only question."

In the cases cited by defendant, that of Bright v. Bell, 117 La. 947, 42 So. 436, is not in point. A hedge planted on the edge of the public roadway by the city of New Orleans was trimmed by defendant in his capacity of Metairie road commissioner, under the instruction of the mayor, because it had spread to such an extent as to brush the passing street cars. Neither is the case of Irwin v. Great Southern Tel. Co., 37 La. Ann. 63, as no special damage was caused by the erection of a light pole.

We conclude, therefore, that, though an abutting property owner has not a true servitude in shade trees planted in the sidewalk in front of his property, he has in them a right in the nature of an easement which must yield to a proper public use, but which entitles him to recover the damage peculiar to his property caused by their unnecessary or negligent destruction.

Plaintiffs' second theory that this case is governed by the constitutional prohibition against the damaging or taking of private property for public use, without just compensation (Const. art. 1 § 2), is untenable, as no public use is involved.

■■ Under the law, a gas company is not an insurer against damage or injury from the escape of gas from its pipes, unless such an obligation is imposed in its franchise. Annotation, 25 A. L. R. 265.

As defendant is held to no such responsibility by its grant, it is only liable for its negligence. The degree of care required of it is well expressed in the case of Koch v. Southern Cities Distributing Co., 18 La. App. 664, 138 So. 178, 182, as follows: "Natural gas is a dangerous agency. Its distribution is accompanied by many possible dangerous consequences, and it is therefore well established that a higher degree of care and vigilance is required in dealing with such agency than is required in the ordinary affairs of life. A degree of care commensurate to the danger involved is required of a distributor of natural gas to avoid injury and damage and, in case of failure to exercise such care, and injury results, it is liable."

■ No specific negligent act or omission is alleged or proven by plaintiffs, who rely upon the doctrine of rés ipsa loquitur, that the thing speaks for itself. This doctrine is thus defined in 20 R. C. L. p. 187: "More precisely the doctrine res ipsa loquitur asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care had been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care."

This same authority holds further: "The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a prima facie case which entitled him to a favorable finding, unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine of res ipsa loquitur has no application."

■ This doctrine prevails in Louisiana. Monkhouse v. Johns (La. App.) 142 So. 347; Hebert v. Lake Charles I., L. & W. Company, 111 La. 522, 35 So. 731, 64 L. R. A. 101, 100 Am. St. Rep. 505; Lykiardopoulo v. New Orleans & C. R. L. & P. Co., 127 La. 318, 53 So. 578; Dotson v. Louisiana Central Lbr. Co., 144 La. 78, 80 So. 205; Mays v. Southwestern Gas & Elec. Co., 174 La. 368, 140 So. 826; Lawson v. Nossek, 15 La. App. 207, 130 So. 669; Bruchis v. Victory Oil Co., 179 La. 242, 153 So. 828.

■ It does not have to be specially pleaded; it being sufficient if the facts alleged demonstrate its applicability.

In A. & J. Inc. v. Southern Cities Distributing Co., 173 La. 1051, 139 So. 477, it is held that it is not applicable where defendant has no control over the premises or where there is a divided responsibility and the damage may have resulted from a cause over which the defendant has no control. The whole subject is covered by copious annotations in 25 A. L. R. 262; 29 A. L. R. 1250; 47 A. L. R. 488; and 90 A. L. R. 1082.

■ The testimony shows the following facts:

Defendant's mains laid, in the middle of the street, are provided on top with nipples or risers projecting about four inches, to which service pipes are connected by means of a union or L. The service pipe from the house to the main is owned by, and was installed by, a plumber selected, employed, and paid by the property owner. As required by the franchise, only the actual connection at the main was made by the gas company. After the service line was put in by the plumber, it was inspected and approved by the city. The meter is located at the house. In the neutral ground, close to the walk, is a curb box. In the Kendall service pipe, just before it enters the curb box from the main, there is a joint called a "reducer," which changes the size of the pipe from an inch and a half to an inch and a quarter. When the excavation, begun in search of the doodle bug, was enlarged by the company's workman in search of the leak, this reducer joint was exposed as the source of the escaping gas. It was not broken or cracked, but was warped to such a degree that the joint did not fit closely, permitting gas to escape between the threads. It did not leak in sufficient volume to affect the supply to the house. It is not shown when the joint became warped or what caused it.

As stated, this reducer joint was furnished or put in by plaintiff. The work was inspected and approved by the city. We cannot see that defendant can be charged with any knowledge of its condition until notified of the leak. Escaping natural gas is most difficult to discover. It cannot be seen, and has little odor. The testimony shows that it can

be best detected after rains by the telltale bubbles, that after each rain it has an inspection made all over town, and that it acts promptly whenever any leak is reported. Defendant has made such a complete disclosure that the doctrine of res ipsa loquitur disappears from the case. It does not remain as any proof of negligence. The question then is whether or not the facts as established show negligence on the part of defendant. Plaintiff fails to point out where they do, seeming to rely upon the dissipated doctrine. We do not find that defendant has committed any acts of negligence or omitted to perform any duty imposed upon it.

For the reasons above assigned, the judgment appealed from is affirmed.