128 So.2d 323 (1961)
Mrs. Imogene THOMAS, Ind., etc., Plaintiff-Appellant,
v.
GULF STATES UTILITIES CO. et al., Defendants-Appellees.
No. 5315.
Court of Appeal of Louisiana, First Circuit.
March 6, 1961.
Rehearing Denied April 10, 1961.
Certiorari Denied May 12, 1961.
*324 Arthur Cobb, Baton Rouge, for plaintiff-appellant.
Frank W. Middleton, Jr., J. H. Percy, Jr., Edward W. Gray, Baton Rouge, for defendants-appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
ELLIS, Judge.
This is a wrongful death action instituted by Mrs. Imogene Thomas, individually and on behalf of her minor daughter, as the widow and surviving child of decedent, George Thomas, against Gulf States Utilities Company, Jack R. Allelo, and his liability insurer, Royal Indemnity Company. George Thomas was killed by electrocution while attempting to erect a television antenna next to his trailer in the afternoon on April 1, 1958. The accident occurred in Allelo Trailer Park on Florida Boulevard in Baton Rouge, Louisiana. Plaintiff's suit was tried by jury, and on completion of the evidence and before the jury retired, plaintiff voluntarily dismissed the suit as to the individual defendant, Jack R. Allelo. The jury returned a verdict in favor of defendants, and ultimately, in accordance with the verdict, there was judgment by the Court dismissing plaintiff's suit. From this judgment, plaintiff has taken the present appeal, alleging that the jury's verdict is contrary to the law and the evidence, and should be reversed and rendered in favor of plaintiff.
From the record it appears that decedent, George Thomas, had rented stall 13 in the Allelo Trailer Court, owned and operated by Jack Allelo, and had occupied this space for about a month or six weeks prior to the accident. On the day of the accident, Mr. Allelo requested decedent to move the trailer to straighten it in line with the other trailers and also so that a water line could be repaired. Prior to the moving of the trailer, the television antenna had been located at the extreme front end of the trailer on the trailer hitch. The television antenna had consisted of two 10-foot sections extending about 20 feet above the ground.
After decedent had moved the trailer, he secured the assistance of a Negro, F. D. R. Lee, who worked at a service station owned by Mr. Allelo. Lee testified that he helped decedent add an additional 10-foot section to his antenna, raise the antenna and strap it to the trailer. This additional section made the overall length of the antenna approximately 29 feet. The bottom of the antenna was anchored in a wheel hub on the surface of the ground. He further testified that he mentioned to decedent that the antenna was "pretty close" to the overhead wires. Lee testified that he then returned to his work at the service station.
The only person at the scene of the accident at the time of decedent's death was James Higginbotham, a boy approximately 15 years of age, who also received a severe electrical shock. Higginbotham testified that he had climbed on top of a shed holding on to one of the three guy wires used to steady the antenna. One guy wire was tied to a fence post to the east of the antenna, Higginbotham held one guy wire on the west of the building, and decedent, when last seen was walking with a guy wire behind the trailer to the north. In some unexplained *325 manner the television antenna then came in contact with an overhead 2,400-volt high-tension wire. Higginbotham received a severe shock, and George Thomas was killed.
It appears that Jack R. Allelo began operating the trailer park in question in 1948. The electric service provided by defendant, Gulf States Utilities, was furnished from a pole near the center of the property at a wash house. The line extended east and west. Electric service to the trailer was furnished by a three-wire, three-phase secondary circuit that extended on an overhead system to the trailers. Some months before the accident, a new underground distributing system for electricity was installed and wires which provided the prior service were de-energized but not removed from the poles. Additional electric service was provided by Gulf States Utilities. A 2,400volt line was run from a pole on the east side of the property to a new and higher pole, and a transformer installed immediately adjacent to the old pole near the wash house in the center of the property. The 2,400-volt wire was not insulated and hung at a distance of approximately 27 feet 9 inches from the ground. Stall number 13, the area rented by George Thomas, ran east and west and was located almost immediately under the 2,400-volt wire. The pole on the east side of the property was crooked and leaned south in the direction of decedent's trailer a total distance of 2.2 feet.
Plaintiff strongly contends that Allelo and Gulf States Utilities, as owners and operators respectively of the electric line system and the trailer park were negligent in failing to exercise proper supervision, installation, design, care and prudence in placing uninsulated high-voltage wire above trailer park number 13, without warning the users and tenants of the dangerous condition. Plaintiff further contends that it was negligence on the part of Gulf States Utilities in not properly insulating its hightension wires by either protective coverings or higher lines in the trailer park area where it is foreseeable that people may put up high television antennas.
Several expert witnesses in the electrical field testified at the trial of the matter. Testifying on behalf of plaintiff, Mr. John A. Dickinson, a mechanical engineer who had been Chairman of the National Electric Safety Code and had worked with the Bureau of Standards for over 40 years. Mr. Dickinson testified that although there had been no literal violation of the National Electric Safety Code, he felt that the high-tension line in question presented a hazard to the people in the trailer park. He then quoted a portion of the Code which provided that "Construction should be made according to accepted good practice for the given local conditions in all particulars not specified in the rules." Mr. Dickinson further testified that it was his opinion that the last quoted provision had been violated in this case.
Testifying for defendant, Gulf States Utilities, were Mr. Ambrose K. Ramsey, Professor in Electrical Engineering at L. S.U., and Mr. Clarence W. Ricker, retired Professor of Electrical Engineering from Tulane University. Both Professor Ramsey and Professor Ricker testified that the National Electric Safety Code provides for 2,400-volt wires that there be a clearance of 20 feet from the ground; that when the wires pass over a building there be a clearance of 8 feet; and when the wires run along a building there be a clearance of 3 feet. They were further of the opinion that there were no circumstances or local conditions in the instant case that would require other than normal code requirements.
The jurisprudence of this state is to the effect that insulation of electric wires is to afford protection to life, and a company maintaining such lines is under a duty of using the necessary care and prudence, at places where others may have the right to go either for work or pleasure, to prevent injury. Stansbury v. Mayor and Councilmen of Morgan City, 1955, 228 La. 880, 84 So.2d 445; Hebert v. Lake Charles Ice, *326 Light and Waterworks Company, 1903, 111 La. 522, 35 So. 731, 64 L.R.A. 101; Potts v. Shreveport Belt Ry. Co., 1903, 110 La. 1, 34 So. 103.
In Stansbury v. Mayor and Councilmen of Morgan City [228 La. 880, 84 So.2d 447], the organ of the Supreme Court stated: "It was decided by this Court in the much cited case of Potts v. Shreveport Belt Ry. Co., 110 La. 1, 34 So. 103, 98 Am. St.Rep. 452, that even in the absence of statutory law a company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence, at places where others may have the right to go either for work or pleasure, to prevent injury; that such company carries the duty of keeping its wires perfectly insulated; and it must exercise the utmost care to maintain them in this condition at such places. This rule has been followed in the following cases: Hebert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522, 35 So. 731, 64 L.R.A. 101, 100 Am. St.Rep. 505; Babin v. Sewerage & Water Board of New Orleans, 2 La.App. 517; Ledet v. Lockport Power & Light Co., Inc., 15 La.App. 426, 132 So. 272; Bynum v. City of Monroe, La.App., 171 So. 116; Webb v. Louisiana Power & Light Co., La.App., 199 So. 451; Mays v. South-western Gas & Electric Co., 174 La. 368, 140 So. 826; Hughes v. South-western Gas & Electric Co., 175 La. 336, 143 So. 281. Likewise, in the following cases the electric company was found negligent for failure to insulate where such was specifically provided for by city ordinance; Haight v. New Orleans Public Service Co., 2 La.App. 405; Clements v. Louisiana Electric Light Co., 44 La.Ann. 692, 696, 11 So. 51, 16 L.R.A. 43; Moren v. New Orleans Ry. & Light Co., 125 La. 944, 52 So. 106. And in the case of Layne v. Louisiana Power & Light Co., La.App., 161 So. 29 the plaintiff was allowed to recover when he was injured by contact with wires connected to a house while he was engaged in repairing a roof because the defendant company was negligent in failing to insulate the wire in violation of the National Electrical Code.
"Hence the jurisprudence of this state is to the effect that when electric wires are so situated at places where it is to be presumed that others will go for work or pleasure, there is a duty on the company not only to properly insulate these wires but also to exercise the greatest degree of care and constant vigilance in inspecting and maintaining the wires in perfect condition. This is especially true when there is a law which provides for such insulation."
It is reasonable to anticipate that people who live in trailers will have television antennas, and that such antennas may be raised to heights in excess of the minimum requirements of heights of wires required by the National Electric Safety Code and in excess of the height of the wires in this instance. Trailer homes are normally temporary in nature, necessitating frequent putting up and taking down of TV antennas. The space which these antennas occupy is clearly an area where people normally go for work or pleasure, creating a corresponding duty on the part of the company maintaining high-voltage lines to exercise the greatest degree of care to protect the public.
However, it is not necessary that we base our decision upon the negligence of defendant, Gulf States Utilities, as we are convinced that the decedent was contributorily negligent.
The settled jurisprudence is that when the defense of contributory negligence is pleaded, it must be proved by a preponderance of the evidence. Clements v. Louisiana Electric Light Company, 44 La.Ann. 692, 11 So. 51, 16 L.R.A. 43; Layne v. Louisiana Power & Light Co., La.App. 2nd Cir., 1935, 161 So. 29; Stansbury v. Mayor and Councilmen of Morgan City, 1955, 228 La. 880, 84 So.2d 445. *327 Further, if there are no eyewitnesses to any acts of negligence on the part of a decedent, it is presumed that he acted with ordinary care. Stansbury v. Mayor and Councilmen of Morgan City, supra.
From the record, it appears that decedent, George Thomas, was 45 years old at the time of his death. The record indicates that he had finished high school and attended college for two years. His vision was shown to have been normal and his intelligence at least average. He had engaged in professional wrestling, and at various times had worked as a baseball umpire, welder, referee and cab driver. He had lived in the Allelo trailer park for a month or six weeks and was familiar with the surroundings. Mrs. Thomas testified that her husband was familiar with the overhead wires and that was the reason they had previously used only two 10-foot lengths of the antenna.
Three witnesses testified that they had either warned or brought to decedent's attention the fact of the overhead wires. Prior to the attempted installation of the antenna, Mr. Jack Allelo testified that he had mentioned to decedent that there was a wire up there; that it was a hot wire; and to be careful of it. Allelo further testified that he knew the hot wire was there; that decedent knew it; and that it was apparent since the wire was shiny aluminum and could be seen from the ground.
F. D. R. Lee, the colored boy who assisted decedent in adding another length to the antenna testified that after the antenna was raised, he mentioned that the wires were "pretty close" to the antenna.
James Higginbotham, the boy who was assisting decedent with the guy wires for the antenna, testified that he had asked decedent about the lower, de-energized wires in close proximity to him and decedent had replied that they were deenergized. However, this again should have brought the attention of decedent to possibility of electric shock from the high powered wires with which the antenna came in contact. From the record it is our conclusion that decedent knew the high-voltage wires were there; that they were dangerous; and notwithstanding this knowledge he chanced to erect the antenna in close proximity thereto. Such action, under the circumstances, we feel was contributory negligence and defeats recovery by plaintiff.
Counsel for plaintiff strenuously contends that the issue of contributory negligence in this case is controlled by the findings of the Supreme Court in the cases of Calton v. La. Power & Light Co., 1953, 222 La. 1063, 64 So.2d 432, and Stansbury v. Mayor and Councilmen of Morgan City, 1955, 228 La. 880, 84 So.2d 445.
In the Calton case decedent rode a log loader with a high beam in close proximity to defendant's high-voltage line. The driver stopped, deceased got out and attempted to lower the boom before passing under the line. In attempting to lower the boom by pulling a pin, he was electrocuted. All the witnesses testified that it appeared that the boom was still a distance from the line when the loader was stopped. The Court held that, although deceased was well aware of the danger inherent by contact with the wires, he was reasonable in believing, as did all the other witnesses, that the boom was not in contact with the wires and it would be safe to lower it. Therefore, it was held that he was not contributorily negligent.
The facts in the present case are different in several respects from the Calton case. In the instant case three persons on three separate occasions at least partially questioned the advisability of erecting the antenna in the manner carried out by decedent. In the Calton case all the witnesses at the scene deemed it safe for the deceased to follow the course of action which resulted in his death. Secondly, deceased was not operating the loader nor boom, but was only a rider, who had jumped off the truck to pull a pin so that the boom could be lowered by its operator. *328 Under the circumstances it is clear that the deceased was doing everything reasonably possible to safely pass under the wire. Whereas, in the instant case decedent acted imprudently and carelessly in the erection of the antenna, and its subsequent contact with the wire.
In the Stansbury case, a housepainter came into contact with defectively insulated wires leading to a dwelling. There were no eyewitnesses to the accident and the decedent was found dead at the foot of his ladder. In treating of the question of contributory negligence, the organ of the Supreme Court stated that where there are no eyewitnesses to any act of negligence it is presumed that the deceased acted with ordinary care. Different from the Stansbury case, in the present suit there were two witnesses to acts of negligence on the part of decedent. F. D. R. Lee witnesses the negligent act of decedent in placing the unstable antenna in close proximity to the wires, where it would be reasonable to anticipate that the antenna might come in contact with them. Further, the boy, James Higginbotham, witnessed the negligent acts of deceased in continuing to manipulate the antenna in close proximity to the high-tension wires.
The facts as shown by the record in the present case more closely approach those presented in the case of Bouchon v. New Orleans Ry. & Light Co., 154 La. 397, 97 So. 587, 588. In the Bouchon case, the decedent prior to his coming in contact with high-voltage wires, was warned of their danger and replied, "Damn the wire." Although the decedent in the instant case did not utter such a reply to any of the parties that mentioned a concern over the antenna coming into contact with the wires, his actions indicated at least a partial indifference or possibly confidence that he could keep the antenna away from the high-voltage wires. Such action, under the circumstances amounts to contributory negligence and precludes recovery.
Having decided that the contributory negligence of the deceased precludes any recovery in this action, it is unnecessary to pass upon the question of negligence of the owner of the trailer court, Jack Allelo, and the resulting liability, if any, of Royal Indemnity Co., the liability insurer of Allelo.
For the above reasons the judgment is affirmed.
Affirmed.