145 So. 532

**RAUSCH CO., Inc., v. NEW ORLEANS GREAT NORTHERN R. CO.**

No. 31360.

Jan. 3, 1933.

Fred J. Heintz, of Covington, and Louis C. Guidry and Dart & Dart, all of New Orleans, for appellant.

B. M. Miller, of Covington, Donald S. Wright, of Mobile, Ala., and Benj. W. Miller, of Bogalusa, for appellee.

LAND, J.

Plaintiff has brought the present suit against defendant, claiming damages in the sum of $4,600.71 for the alleged negligent destruction by fire of a quantity of pine tar in metal drums, located in plaintiff's tar yard at Folsom, La.

Plaintiff contends that the fire in its tar yard originated from a trash fire set out by a section foreman of defendant, for the purpose of destroying the old records at the station at Folsom, which had been discontinued by defendant.

All liability for the fire is denied by defendant in its answer. But it is contended by defendant that the fire set out by plaintiff's own employees in plaintiff's tar yard at Folsom, for the purpose of heating and removing the bungs from the metal drums in order to prime the tar, heated the tar also in the drums, thereby rendering it inflammable and causing the explosion of the drums, and the fire that followed in plaintiff's tar yard.

Having reached the conclusion that plaintiff had not shown, by a preponderance of the evidence, that the damage was caused by the

fire set out by defendant, the trial judge rendered judgment in favor of defendant, rejecting plaintiff's demand and dismissing plaintiff's suit. From this judgment plaintiff has appealed.

The tar yard of plaintiff is 110 feet wide by 178 feet in length and lies, in the main, northeast of defendant's depot at Folsom, La.; the lower or southern end of the tar yard being almost directly east of the center of the depot.

The Jenkins & Moore spur track, used by plaintiff, in making tar shipments, lies adjacent to the tar yard. Defendant built the trash fire between the house track and the spur track, the fire being located 40 feet east of the center of the depot, and 78 feet west of the lower or southern line of plaintiff's tar yard, by actual measurement of the distance.

The site on which the fire was set out by the section foreman of defendant was a spot that was dry, free from grass or any other inflammable material, and was in the middle of a piece of sun-baked clay.

It is not contended by plaintiff that the fire in the tar yard ate its way, through grass or other inflammable material, from the point where it was lighted by the section foreman east of the depot, between the house track and the spur track.

No person actually saw the beginning of the fire which ultimately destroyed the tar yard, but several witnesses, however, noticed it before it had gained any great headway.

The only fires discovered by any witness before the fire occurred in the tar yard were "three small fires," very near each other, which Luther Hickman, plaintiff's witness, claims to have found near the spur track, and which had caught in the dry bark or dry chips along the tracks.

Hickman, however, testified positively that *he put out all of these fires with water*, and that there were no other fires there. He left the tar yard, where he worked, at about 6 o'clock on the day the yard burned, which occurred on March 31, 1930, at about 9 o'clock p. m.

This witness does not pretend that the tar yard caught on fire from any of the fires set out near the spur track, nor does any other witness of plaintiff so testify.

On the contrary, Hickman signed a written statement on April 16, 1930, in which he declared, among other things, that: "The section foreman was engaged in cleaning out all old papers in the Folsom depot, which was to close on April 1, 1930, and set out a fire about 30 feet from the depot, and I cannot judge how far it was to the nearest drum containing tar. The fire was set out at a place that was free of dead grass, chips, etc., and it was not possible for the fire to reach the tar ramp (yard) *unless it had blown there.* During the afternoon the wind was blowing out of the *southwest,* but about 8:30 it changed and was then blowing directly out of *the south.* When I reached the fire shortly before 9 o'clock, I observed that the smoke was going directly *northward."* Tr. p. 91. (Italics ours.)

The testimony of Jim Pitman, witness for plaintiff, that the fire commenced on the *west* side of the yard near the track is of no force whatever, as he arrived at the scene of the fire thirty minutes after it started,

and a number of tar drums had exploded before he got there.

Colon Manton, a witness for plaintiff, and an employee of plaintiff at the tar yard, testified that he looked at the fire from his house, over a quarter of a mile away, and *"figured"* that it started near the loading ramp, on the *east* side of the track.

Opposed to this we have the testimony of nine of defendant's witnesses, who stated that the fire started in the *southeast* portion of the tar yard, close to where the fires had been set out by Manton and Hickman, employees of plaintiff, who had built fires in the *south* end of the tar yard on the day it was burned, March 31, 1930, for the purpose of priming the tar and burning the tar off the bungs so that they would fit the drums. Manton testified that his fire was made out of splinters, was kindled at 1 o'clock, and burned out in about two hours, i. e. by 3 o'clock.

However, P. M. Reed, witness for defendant, testified that, as late as 5 or 5:15 p. m. on the day of the fire, March 31, 1930, he saw Hickman, inspector for plaintiff, priming tar in the yard; that he was using fire for this purpose; that the fire was in the center of the yard on *the south* end; and that tar drums were all around the fire.

This witness explained that fire was used to heat the bungs on the metal drums; that then a wrench was used to get them off; and that he had never heard of using fire to put the bungs back in the drum, as testified to by Manton.

Between 4:30 and 5 p. m. on the day the tar yard burned, C. E. Gay, witness for defendant, also saw Hickman in the yard at

a fire priming tar. Hickman himself states that he did not leave work until about 6 o'clock p. m. on the day the yard burned.

Hickman denied on the witness stand that he had any fire at all in the tar yard on the date of the burning; yet he is contradicted by two witnesses of defendant; and the attempt of Manton to lead the court to believe that there was no fire in the tar yard, after he left there at 3 o'clock p. m., has also utterly failed in this case.

Seven of plaintiff's witnesses testify that the wind was from the *southwest*, and eight of defendant's witnesses testify that the wind had changed and was from the *south or the southeast* at the time of the fire.

Be that as it may, some burnt paper was found on the tar yard.

The point at which the fire originated, southeast corner of the tar yard, is fully 180 feet from the fire set out by the section foreman of defendant.

It may be that burning paper falling, at a distance of 30 or 35 feet, from the fire set out by defendant, among dry chips or bark near the spur track, did ignite same. But, we have in this case a very different proposition with which to contend.

Mr. John T. Rausch, an officer of plaintiff, testified that: "tar by itself is not very inflammable. In other words, I believe you could throw a small torch in an open tar barrel and it would go out; I know you can throw a match in and it will go out." Tr. p. 97.

Mr. Rausch further stated: "We salvaged sixteen hundred drums a few years ago; we had to *reheat* these drums, go over and work them, and every once and a while one

would catch fire, and the minute it would catch on fire it would explode, and when it exploded it set other drums on fire. I remember one occasion during the day (when) they were *heating* a drum it exploded and set the yard on fire, and we had to call the fire department out, and it burned twenty-one drums before we could stop it, we couldn't stop it. *Still you could throw a match in there and it would go out, and I believe you could take a piece of kindling wood and chunk it in the tar and it would go out.*" Tr. 23, 24.

In other words, tar drums catch on fire and explode when they are sufficiently *heated.*

If a lighted piece of kindling wood will go out, when it is placed in a metal tar drum, how many sheets of burning paper will it take, drifting a distance of 180 feet through the air, to heat an iron tar drum sufficiently to make it catch on fire and explode, or how many such sheets will it require, at the same distance, to heat tar drippings on the ground near an iron tar drum to ignite these drippings and heat the tar drum sufficiently to catch on fire and explode?

Can fire applied directly to a bung in a metal tar drum, in order to prime the tar, heat the drum sufficiently to cause it to catch on fire and explode?

The record is barren of any statement as to whether the fire set out by Hickman, and which was burning at 5 or 5:15 o'clock p. m., was left burning or whether it was put out by Hickman or anyone else.

The fire set out by plaintiff's employees on plaintiff's own premises was made of wooden splinters, and not of thin, insubstan-

tial sheets of paper, was kindled in the midst of the tar drums standing around, and was presumably near the tar drippings, as Hickman was there engaged in priming the tar.

The burden is on plaintiff to prove more than a probability. Plaintiff must establish with clear legal certainty that the paper fire actually caused the burning of the tar yard, and must rely herein upon circumstantial evidence for such proof.

The trial judge visited the scene of the fire, saw the surroundings, and familiarized himself with the entire locus in quo. The opinion of the judge a quo upon questions of fact, having had the opportunity of seeing the witnesses and hearing their testimony, is entitled to great weight. As his judgment in this case is not clearly wrong, it will be affirmed.

Judgment affirmed.