### KENT v. LEFEAUX et al.
### No. 1624.

Court of Appeal of Louisiana. First Circuit.

Oct. 7, 1936.

Taylor, Porter & Brooks, of Baton Rouge, for appellant.

Bouanchaud & Kearney, of New Roads, for appellees.

OTT, Judge.

On June 28, 1934, the plaintiff in this suit, Mrs. Leona Smith Kent, filed a petition against L. Ivy Lefeaux individually and as the legal representative of his minor son, Lawrence Lefeaux, and against the Maryland Casualty Company, for damages in the sum of $15,000 which she claims to have suffered in an automobile collision on January 1, 1934, between 6:30 and 7 o'clock p. m. on old state highway No. 71 between Maringouin and Livonia in Pointe Coupee parish. She alleges that she was at the time of the collision a passenger in a Ford car owned by her husband, David T. Kent, and being driven by her son, Leslie Kent, who was then 18 years of age; that the car in which she was riding was traveling in a southerly direction toward Maringouin and her said son was driving on his right-hand side of the road, at a reasonable rate of speed and in a careful and prudent manner, with both headlights burning; that a Ford car coming from the opposite direction, driven by Lawrence Lefeaux, the minor son of said L. Ivy Lefeaux, collided with the car in which she was riding, causing her severe and permanent injuries, which she describes in her petition. She further alleges that the Ford car driven by said Lawrence Lefeaux was owned by his father and was being driven by the son with the consent of the father; that the above-named casualty company had issued a policy on said car insuring said L. Ivy Lefeaux against public liability and property damage.

The specific negligence charged against the driver of the Lefeaux car is that he was driving on his left side of the road, without warning, and was driving at an excessive rate of speed; that "the said Lawrence Lefeaux negligently, recklessly and carelessly steered the said Lefeaux car to his left side of the road with the result that it traversed beyond the center towards the west side of said road and collided with the left front side of the said Kent car."

Defendants admit that the car which collided with the car in which plaintiff was riding was owned by defendant, L. Ivy Lefeaux, and that the car was being driven by said Lawrence Lefeaux, but they deny that said Lawrence Lefeaux was driving said car with the knowledge and consent of his said father; they aver that the Kent car was being driven by said Leslie Kent at an excessive rate of speed on the wrong

side of the road, with only one light burning; that the Lefeaux car was being driven in a proper manner on the right side of the road; that the collision occurred because of the negligence of said Leslie Kent in driving his car in a southerly direction on the left or east side of the road and with only one light burning. In the alternative, defendants plead contributory negligence on the part of plaintiff and said Leslie Kent.

On October 12, 1934, Miss Lena Kent, a major daughter of plaintiff and David T. Kent, also filed a suit against the same defendants for damages in the sum of $750 for personal injuries which she claims to have received in said accident and while a passenger in the Kent car. She makes the same allegations of negligence against the driver of the Lefeaux car as were made by her mother, Mrs. Leona Smith Kent, in her suit. The answer to her suit is about the same as the answer to the suit of Mrs. Leona Smith Kent.

On the same day that Miss Lena Kent filed her suit, David T. Kent filed a suit against the same defendants asking for damages in his individual capacity in the sum of $987.20 on account of medical and drug bills incurred by him in treating his wife, Mrs. Leona Smith Kent, and four of his minor children who were injured in said collision, and for damage to the Ford car which his son, Leslie Kent, was driving at the time. He claims the further sum from said defendants in his capacity as administrator of the estate of his four minor children, Leslie Kent, Floyd Kent, Beatrice Kent, and Caroline Kent for personal injuries received by them in said collision in the following sums: Leslie, $5,000; Floyd $2,500; Beatrice $500; and Caroline $1,000, a total for said minors, of $9,000. The suit is based on the same alleged grounds of negligence on the part of Lawrence Lefeaux as are charged against him in the other two suits. The defense urged is also the same, but in this latter suit the defendant, L. Ivy Lefeaux, filed a reconventional demand against David T. Kent for damages which he claims to have suffered on account of the accident in the sum of $1,280 made up of damage to his car, medical and other expenses incurred in treating his son Lawrence, for injuries received by him in the wreck, together with loss of time by himself and loss of the services of his son on account of the accident. He further claims for his minor

son, Lawrence, and as his representative, the sum of $5,000 for personal injuries received by his said son in the collision. Thus the total amount claimed by the plaintiffs in the three suits is the sum of $25,737.20. Add to this the amount claimed in the reconventional demand of $6,280, and we have the total of $32,017.20 claimed as damages resulting from this one unfortunate accident.

The three cases entitled on the docket of the lower court as Mrs. Leona Smith Kent v. L. Ivy Lefeaux et al., No. 1586, Miss Lena Kent v. L. Ivy Lefeaux et al., No. 1613, and David T. Kent v. L. Ivy Lefeaux et al., No. 1614, were consolidated for the purpose of trial and separate judgments were entered in each case. The judgment of the district court in each case rejected the demands of the plaintiff, and in the last-named and numbered case, the judgment also rejected the reconventional demand. The plaintiffs in all three cases have appealed. There was no appeal from the judgment rejecting the reconventional demand, and, therefore, that part of the judgment is not before us for review.

As the pleadings and the evidence apply alike to all three cases, our reasons in this, the first-numbered and entitled case, will also include the other two cases, except that separate decrees will be entered in each case.

Out of a mass of over 500 typewritten pages of testimony, most of it irreconcilably conflicting, we are urged by appellants to reverse the findings of the trial court and award them damages. The earnestness and thoroughness with which counsel on both sides have presented the cases both in argument and briefs, has induced us to give the cases most careful and painstaking consideration. After allowing for the mistakes and errors to which all human testimony is subject and allowing also for the evasions and exaggerations usually found in cases of this kind, we cannot but observe that the testimony of some of the witnesses is so conflicting that we are unable to account for it from a very charitable viewpoint. To attempt a detailed review of all the testimony here would make this opinion too voluminous and serve no useful purpose.

The trial judge concludes his opinion of the evidence in these words: "I have endeavored to analyze the testimony of

each and every witness in the light of all the facts and circumstances that the record reveals; and the conflicts in the evidence adduced on the trial of these cases are such that, in the opinion of the Court, plaintiffs have not proven their respective claims with the reasonably clear preponderance of evidence that the law exacts."

According to the record, there were 13 eyewitnesses to the accident who testified on the trial of the cases: Five occupants of the Kent car, four occupants of the Lefeaux car, and four colored men who were walking along the road near the scene of the accident. On the principal points of the cases, the testimony of the five occupants of the Kent car is very similar, but in most respects it is in direct conflict with the testimony of the four occupants of the Lefeaux car.

The substance of the testimony of Mrs. Leona Smith Kent, who was riding in the middle of the back seat with two of her children, is to the effect that her son was driving on his right side of the road going south toward Maringouin; that she heard her daughter, Lena, who was sitting on the front seat to the right, say to her brother Leslie, "Look out Leslie, you are going in the ditch," that the cars then collided and she was rendered unconscious; that both lights were burning on their car when they left home a few minutes before, but she does not know if they were both burning at the time of the collision. She denies making a statement to a bystander just after the accident asking that her husband be notified because he did not want them to use the car on account of bad lights.

Leslie Kent, the driver of the Kent car, testifies that he was driving on the right side of the road going toward Maringouin; that his lights were shining so that he could see as well as he wanted to see, but could not say if only one light was burning; does not remember the position of the Lefeaux car in the road coming from the opposite direction just before the accident as he was looking at the ditch on his right and not at the approaching car; he does not know how the collision occurred as he was rendered unconscious. He denies knowing anything about making a statement just after the collision attributed to him by other witnesses to the effect that he wanted the other injured persons attended to first as he was the cause of the accident.

Miss Lena Kent, who was sitting in the front seat on the extreme right, testifies that her brother was driving on the right side of the road, and when the Lefeaux car got in sight, he pulled further to the right; that she told him to watch out as he was going in the ditch; just then Beatrice screamed and the cars hit.

Beatrice Kent, who was sitting in the front seat between Leslie and Lena says that her brother was driving on the right side of the road at a moderate rate of speed; that the Lefeaux car was coming straight in front of them; she screamed, put her head down and heard the crash. She did not hear her sister Lena tell Leslie that he was going in the ditch.

Floyd Kent, age 12 years, testified that he was sitting on the rear seat on the right side; that his brother was driving on the right side of the road, and he heard his sister Lena tell Leslie to look out, that he was going in the ditch. In an instant the crash came.

Against this testimony of five occupants of the Kent car, we have the testimony of four occupants of the Lefeaux car. Three of these were sitting on the front seat, Lawrence Lefeaux, who was about 17 years of age at the time of the accident and who was driving the Lefeaux car, Stanley Lorio, a friend about 18 years of age and who was sitting on the right in the front seat, and Miss Katie Lefeaux, a cousin of Lawrence, who was sitting on the front seat in the middle. Miss Annie Lefeaux, a sister of Lawrence, was sitting on the left in the rear seat with an uncle who was killed in the accident, and the uncle's wife who did not testify in the cases. In substance the testimony of these four occupants of the Lefeaux car is to the effect that they were coming north from Maringouin going toward Livonia; that Lawrence was driving on his right-hand side of the road at a moderate rate of speed from 30 to 35 miles per hour; that they saw the Kent car coming from the opposite direction zigzagging across the road from one side to the other with only one light burning; that Lawrence pulled his car to the extreme right and slowed down; that the Kent car came over on their side of the road and struck their car on the left front fender, then swerved or switched around and struck it again near the center, mashing in the door.

Lawrence, the driver testified that he pulled over so far to his right when he saw

the Kent car coming toward him with one light and zigzagging across the road that, just before the collision, some negroes, walking on the right side of the road going in the same direction, jumped the ditch on the right of the road to keep his car from striking them. The other witnesses in the Lefeaux car testified that, just after the accident, the negroes stated that they jumped the ditch to keep the Lefeaux car from hitting them.

Three colored witnesses, Louis Morgan and his two sons, Clarance and Albert, age about 17 years and 16 years respectively, testified that they were walking on the right-hand side of the road, just off the gravel, going north in the same direction as the Lefeaux car; that within about 60 feet of the collision, the Lefeaux car came up from behind them driving at a moderate rate of speed near the center of the road; that they saw the Kent car coming toward them from the opposite direction with both lights burning on its right side of the road; that when the cars collided, they jumped over the ditch to keep the glass of the cars from hitting them. These witnesses do not specifically state that the Lefeaux car was near the middle of the road when the collision occurred, but they do state that this car was near the center of the road when it passed them some 60 feet from the accident. In a statement which he admitted signing before the cases were tried, Louis Morgan stated that he did not know which car was on the wrong side of the road when the collision occurred, and in the same statement he admitted that he did not remember whether or not both lights on the Kent car were burning. Albert Morgan admitted on cross-examination that they were walking down the road, one behind the other, when the Lefeaux car passed, and that he did not pay much attention to the cars after the Lefeaux car passed as he did not think they were going to hit.

We do not find a great deal of corroboration of the testimony of the occupants of the Kent car in this testimony of the three negroes. On the vital point, whether or not the Lefeaux car was on the wrong side of the road at the time of the collision, their testimony is not very definite and convincing. Their statement to the effect that they jumped the ditch at the time of the impact when they were 60 feet away is not unreasonable, but, on the other hand, it is about as reasonable to believe that they jumped the ditch to avoid the Lefeaux car approaching near them on the right of the road as is claimed by the driver of the Lefeaux car and as three other occupants of the Lefeaux car testify that the negroes stated shortly after the accident as the reason why they jumped the ditch.

One other eyewitness, Albert Toussain, colored, is relied on by plaintiffs to corroborate their witnesses as to the manner in which the accident occurred. This witness says that he was walking south toward Maringouin on his left side of the road; that he turned around and saw the Kent car coming south on its right side of the road with two lights burning; the Lefeaux car was coming from the south in front of him with two lights burning "more toward the middle of the road than the side." The cars collided about 300 feet in front of him.

The evidence shows that the road at the point of the collision is from 27 to 29 feet wide from ditch to ditch. Some of the testimony is to the effect that the traveled part of the road reaches from ditch to ditch; however, that point is of no great importance, as we think that there was some 12 feet on either side of the center of the road for cars to travel. Therefore, if we accept as true the testimony of the four negroes that the Lefeaux car was traveling near, or even in the center, of the road, and if the testimony of the witnesses in the Kent car is correct that their car was traveling on their right near the ditch, it would have been impossible for the cars to have collided. If the Lefeaux car was in the middle of the road with its left side, say, 3 feet over to the left of the center, there would have remained on that side of the road some 9 feet for the Kent car to have passed going south. But plaintiffs allege as the principal act of negligence on the part of the driver of the Lefeaux car that he negligently and recklessly steered his car to the left side of the road with the result that the car traversed beyond the center toward the west side and collided with the left front side of the Kent car. As the evidence does not show that either car was driving at an excessive rate of speed, the question of negligence charged against the driver of the Lefeaux car is narrowed down to that one allegation that he steered his car to his left side of the road and ran into the left front part of the Kent car.

A good part of the testimony is taken up in an effort to show the position of the two cars just after the accident. The testimony on this point by the occupants of the cars and by the witnesses who arrived shortly after the accident, is also very conflicting. Out of this mass of testimony we think there is a preponderance to the effect that the Kent car stopped on its right side of the road, with the right rear wheel against or near the shoulder on the right or west side of the road, and the front of the car pointing at an angle of about 45 degrees toward the center of the road, headed toward Maringouin. It is true that some of the witnesses place the Kent car after the accident as facing almost directly toward the center of the road with its rear toward the west side, and others place this car on the right side, facing south, almost parallel with the ditch. But we think the preponderance of the evidence shows it to have been situated about as we have stated above.

Some of the witnesses place the Lefeaux car after the accident entirely on the left side of the road, facing in a northwesterly direction toward Livonia, while some place this car entirely on the east or its right side of the road. We think the preponderance of the evidence shows that the Lefeaux car stopped near the center of the road, with its front facing in a northwesterly direction, just north of the Kent car, and with its rear right wheel between 7 and 11 feet from the ditch on the east side.

Plaintiffs have stressed the position of the cars after the accident as tending to support their claim that the Lefeaux car left its side of the road and came over on the west side and struck the Kent car. This fact does seem to give some corroboration to the plaintiffs' witnesses on this point. However, there is no testimony to support the conclusion that the cars stopped at the exact point of the impact. The cars could have collided near the center of the road, or even on the east side, and still have come to a stop in the position they were found. If we enter the field of speculation on this point, we might reasonably assume as possible that the Lefeaux car was coming north on its side of the road, or nearly over to the center, while the Kent car was coming from the opposite direction, on its side of the road, when, on the exclamation by Miss Lena Kent to Leslie that he was going in the ditch, the driver could have suddenly pulled his car to the left, striking the Lefeaux car on its left near the center of the road. The Lefeaux car, being the heavier of the two, would have tended to push the Kent car back toward the west side of the road, while the Lefeaux car, with its rear pushed back, would have tended to move diagonally across the center of the road. However, as stated, this is pure speculation as to the manner in which the accident happened, and we cannot decide the cases on probabilities and possibilities.

The photographs of the two wrecked cars show that they were each struck on their left side, near the front. Therefore, it was not a head-on collision, but at least one of the cars must have been pulled considerably to its left in order for the cars to strike as they did. If the Lefeaux car was being pulled to its left and struck the Kent car on its right-hand side of the road near the ditch, as the Kents claim, it seems likely that the Kent car would have been knocked further over into the ditch, and its front could hardly have been facing toward center of the road as it was. Nor in that case is it probable that the Lefeaux car would have stopped across the center of the road as it did.

The only witness who undertook to testify about skid marks on the gravel after the collision was Mr. R. J. Stephens who arrived on the scene some time after the accident and after many others had walked over the ground. He says that the skid marks of the Lefeaux car after the impact showed that the rear wheels skidded, bearing to the driver's right, while the marks on the gravel showed that the front part of the Kent car skidded to the left after the impact. It is difficult to reconcile this testimony with the other testimony showing the position of the cars after the collision. A witness for defendant, Mr. C. H. Smith, undertook to tell of signs on the gravel behind the rear wheel of the Kent car stating that "it looked like where the car had skidded back and it had formed up behind the wheel." This witness, who had testified that the Kent car had stopped straight across the road with is front toward the center and the rear wheel 18 inches from the west ditch, evidently meant to convey the impression that the impact had pushed the Kent car back from the center or east side of the road and the skidding of the car wheel in backing up had accumulated this pile of gravel behind

it. This testimony, if correct, is also difficult to reconcile with the other testimony relative to the position of the cars after the collision. We cite the testimony of these two witnesses to show the conflicting nature of the evidence.

 In order for plaintiffs to recover, they must show that the accident was caused by the fault of the driver of the Lefeaux car, as they allege in their petition. They must prove more than a mere probability as to the cause of the accident. In these cases they have not only failed to prove with legal certainty that the alleged negligence of the driver of the Lefeaux car was the sole and proximate cause of the accident, but they have failed to show the exact manner in which the accident occurred. Rohr v. New Orleans Gaslight Co., 136 La. 546, 67 So. 361; Rausch Co. v. New Orleans Great Northern R. Co., 176 La. 257, 145 So. 532.

We cannot find any manifest error in the conclusions reached by the trial judge on the facts in the cases.

For the reasons assigned, it is ordered that the judgment appealed from in this case, Mrs. Leona Smith Kent v. L. Ivy Lefeaux et al., No. 1586 on the docket of the district court of Pointe Coupee parish, be, and the same is hereby, affirmed at the cost of appellant.