**WEDDLE v. PHELAN et al.**

No. 1762.

Court of Appeal of Louisiana. First Circuit.
Dec. 9, 1937.

Lewis & Lewis, of Opelousas, and Frank T. Doyle, of New Orleans, for appellants.

Hawthorn, Stafford & Pitts, of Alexandria, for appellee.

DORE, Judge.

This is a suit growing out of a collision between a baseball bus owned and

operated by defendant Art Phelan, and a truck trailer owned by Tony and Sam C. Danna, operating under the trade name of Danna's Crystal Market, and operated by an employee of the said Dannas, on the night of May 20, 1936, at about the hour of 10 p. m., at a point on the Jefferson Highway in the parish of St. Landry; and in which plaintiff received certain injuries, the most serious of which was to his right eye. The defendants are the owners of the bus and the truck trailer and their respective insurers. The plaintiff was a guest passenger of the baseball bus. The bus was traveling north and the truck trailer was traveling south.

The plaintiff alleges that, just prior to the accident, he had dozed off to sleep, and knew nothing about the collision until he was rudely awakened by the jar and noise of the impact. He shows that, while he is not informed as to exactly how the collision occurred, on information and belief, he alleges that the accident was due to the negligence of both Phelan, the owner and driver of the bus, and that of the driver of the Danna truck trailer. He alleges further, on information and belief, that Phelan was negligent in operating the bus at an excessive rate of speed, without proper lights, without keeping a proper lookout for oncoming traffic, and in failing to drive the bus entirely on the right side of the road. He alleges, also on information and belief, that the driver and operator of the Danna truck trailer was negligent in the same respects as the driver of the bus, with the additional allegation that the truck and trailer was not equipped with clearance lights, no lights being on the large trailer. He alleges that the collision occurred at a point somewhere near the center of the road, the two vehicles "side-swiping" each other, causing the glass of the windows of the bus to break, causing the pieces of the glass to fly into his face thereby injuring his right eye by cutting and lacerating the eyeball, resulting in a severe and permanent injury thereto.

All defendants filed exceptions of no cause or right of action, which were overruled. Separate answers on behalf of the owners and their respective insurers were filed in which negligence was denied by the bus driver and the truck trailer driver. The bus driver charges the truck trailer driver with negligence in driving a large trailer on the public highway at night without any lights on it, and which trailer was zigzagging from one side of the road to the other, it being charged by Phelan and his insurer that the cause of the collision was the fact that this unlighted trailer protruded over into the lane of traffic occupied by the bus, and sideswiped it as the bus had passed the front part of the truck. The Dannas and their insurer charge the driver of the bus with negligence in the same particulars as is charged on information and belief. Both defendants contend that their vehicle was well to the right, the accident happening in their respective lane of travel.

Judgment was rendered in favor of plaintiff and against all defendants in solido for the sum of $3,649.15. All defendants have appealed; and plaintiff has answered the appeal, asking that the amount of the judgment be increased to $7,500, plus medical and hospital expenses.

■■■ Defendants again urge their exception of no cause or right of action in this court. The exception is based on the allegation of plaintiff that he was asleep in the bus when the collision occurred, and it is contended that plaintiff has thus affirmatively shown his own negligence in putting himself in a position where he could not protest or protect himself from the alleged negligence of his host, Phelan, in his continuing act of negligence in driving on the wrong side of the road, without proper lights, and at an excessive rate of speed. But the petition does not show such circumstances as would require the plaintiff, riding in the bus at night on a paved highway, with no outward appearances of danger, to keep awake and observe the road ahead, or to watch the bus driver to ascertain that he was not on the wrong side of the road or driving too fast. He had a right to assume, in the absence of special circumstances of danger, that the driver was properly operating the bus in which he was an invited guest. The law on this point is correctly stated in 4 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.), p. 232, § 2432, as follows: "It does not necessarily show negligence on the part of a passenger in an automobile that he was sleeping before and at the time of an accident caused by the negligence of the driver which results in injury to such passenger. However, a passenger cannot escape the obligation of due care whenever the occasion arises for its exercise on the plea of having fallen asleep, if an ordinarily prudent person would not have fallen

asleep under the same or similar circumstances."

 Blashfield cites several instances in the same section where the circumstances might be such as to require the guest to keep awake and watch for dangers, such as the fact that the driver is himself tired and sleepy, or from the fact that the driver is drunk to the knowledge of the guest. Numerous cases are cited by counsel for plaintiff holding that it is not negligence as a matter of law for a guest to go to sleep while a passenger in a car. The question of whether or not such action on the part of the guest is negligence depends on the facts and circumstances of each particular case, and it certainly cannot be said in this case that the facts and circumstances alleged by plaintiff are such as to show negligence on his part in going to sleep in the bus. The exceptions were properly overruled.

The evidence as to just how the accident happened is in irreconcilable conflict. The bus driver and a passenger on the bus exculpate the bus driver from all fault. According to these two witnesses, the bus was traveling at a moderate rate of speed, with all lights burning and on its right side of the road. They fix the blame for the collision on the truck driver, claiming that the trailer on the truck had no lights and swerved out from the center of the road across the black line and sideswiped the bus as it passed. On the other hand, the truck driver and one of the Dannas sitting beside him in the truck place the blame on the bus driver. They claim that the truck and trailer were properly lighted; the truck and trailer were well on the right side of the road; that the bus came over onto its left or wrong side of the road and ran into the trailer.

From the testimony of the witnesses for the defendants at least two things are certain: That there was a collision of the bus and the trailer, and yet there could have been no collision if the testimony of the bus driver and the truck driver is true. It follows as a rather simple, but at the same time important, proposition that, as there was a collision, either the testimony favoring the bus driver is false, or that favoring the truck driver is false, or that of both is untrue.

The trial judge frankly admitted that he could not tell from the evidence whose negligence caused the collision, but he found that the accident was caused by the negligence of either the driver of the bus or the driver of the truck, or the negligence of both. Under the facts as he found them, that an accident had occurred under circumstances showing negligence on the part of the drivers of the two vehicles, it then devolved on these drivers to exculpate themselves from fault, and, as they failed to do so, the judge applied the doctrine of res ipsa loquitur to both drivers and held all defendants liable.

 Again referring to 9 Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Ed.) p. 244, § 5983, we find the doctrine of res ipsa loquitur explained as follows: "The res ipsa loquitur doctrine is based in part upon the theory that a defendant in charge of an instrumentality which causes injury either knows the cause of the accident or has the best opportunity of ascertaining it; and the plaintiff, having no such knowledge, is compelled to allege negligence in general terms and to rely upon proof of the happening of the accident in order to establish negligence."

 The plaintiff in alleging and proving the happening of the accident under circumstances indicating that the accident would not have happened but for the negligence of either the bus driver or the truck driver, or both, had the right to rest on this prima facie showing of negligence, and it then became the duty of the drivers of the vehicles to exonerate themselves from the presumption, or inference, of negligence in the operation of their respective vehicles. Overstreet v. Ober et al., 14 La.App. 633, 130 So. 648; Hamburger v. Katz et al., 10 La.App. 215, 120 So. 391; Monkhouse v. Johns (La.App.) 142 So. 347; Lykiardopoulo v. New Orleans & C. R. Light & Power Co. et al., 127 La. 309, 53 So. 575, Ann.Cas.1912A, 976; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205.

 The trial judge found that neither of these defendants had exculpated himself from fault. It is contended by defendants that, as each driver of the two vehicles has offered evidence exonerating him from negligence, the doctrine could not be applied, but that it is the duty of the court to determine from the evidence which one of the drivers caused the accident, and, unless the court could find that the negligence of both drivers contributed to the accident, the judgment against all defendants cannot stand. But it must be

remembered that the court is not now concerned with the responsibility of the defendants, inter sese, but is concerned with the liability of any one or all of the defendants to the plaintiff.

Taking them separately, how has the driver of the bus exonerated himself and rebutted the inference of negligence? By placing the blame on the truck driver. How has the truck driver exonerated himself and rebutted the inference of negligence? By placing the blame on the bus driver. The weight of the evidence offered by each is of equal value, the one balances the other, with the result that the situation reverts. to the condition existing before defendants offered their proof, i. e., the plaintiff had made out a prima facie case against both drivers.

The situation would be different if the evidence in the case offered by all the parties had been of such a nature as to show that only one of the drivers was guilty of negligence, as was the case in Overstreet v. Ober, supra. Or, if plaintiff had sued only the driver and owner of the truck, and had alleged specific acts of negligence against the truck driver as the cause of the accident, he would have been required to prove the negligent acts of the truck driver in the same way as would Phelan, the bus driver, had Phelan sued the truck driver for damages to the bus. Such was the situation in the case of Kent v. Lefeaux et al. (La.App.) 169 So. 793, cited by counsel for the owner of the truck. In the cited case Mrs. Kent did not sue the driver of the car in which she was riding nor charge him with negligence as the cause of the accident. She was in the same position with reference to proving negligence in Lefeaux as Leslie Kent, the driver of the Kent car, was in his suit filed by his father in his behalf.

■ It is further contended by the defendants that the res ipsa loquitur doctrine cannot apply in this case for the reason that plaintiff has alleged specific acts of negligence on the part of the drivers of both vehicles. But he has also made general allegations of negligence against them, the specific allegations being made on information and belief. In article 11 of his petition, plaintiff alleges: "Petitioner shows that while he is not informed as to exactly how said collision occurred, he avers upon information and belief that it happened because of the faulty and negligent driving of both Phelan and Danna.

* * *" Under the allegations, the doctrine applies. 9 Blashfield, supra, pp. 244, 245, § 5983; Horrell et al. v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, at pages 610 and 611, 131 So. 709.

■ It is contended by the defendants that should we apply the rule of res ipsa loquitur and hold the defendants guilty of negligence then we should hold the plaintiff guilty of contributory negligence by his failure to remain in possession of his faculties of sight, hearing, and perception, and by allowing himself to go to sleep he acquiesced in the negligence of Phelan and therefore cannot recover.

The evidence is that Phelan enjoyed the reputation of being a careful and prudent driver; that plaintiff had often ridden with him; that on the day and the night of the accident, Phelan was driving carefully as a prudent driver should prior to plaintiff falling asleep; Phelan was a matured man, the owner of both the ball club and the bus. The plaintiff had no reason to expect that Phelan would not continue in driving otherwise but to what he had been accustomed; there was no occasion, either in the method of driving or the physical condition of Phelan, to require plaintiff to keep awake and observe the road ahead or to watch the bus driver to ascertain that he was not on the wrong side of the road or driving too fast. The defendants do not point us to any facts but that he dozed off a few minutes prior to the accident to hold plaintiff guilty of contributory negligence, and we find none. For the reasons heretofore given in the overruling of the exceptions and the authorities therein cited, we now hold that plaintiff was free of any contributory negligence and should recover.

The only remaining question to be considered is the quantum of damages.

■ After the collision, Weddle was immediately taken to a doctor at Bunkie who administered "first aid" and referred Weddle to a specialist at Alexandria, La. After a treatment of a few days, the eyeball became swollen with blood; and, in order to relieve the swelling, it became necessary to puncture the eyeball. He remained in the hospital for 14 days. The testimony is to the effect that he suffered excruciating pains, necessitating, at times, sedatives to relieve the pains. We believe that an award of $500 for his pains and sufferings to be in line with our jurisprudence.

We shall consider the items of loss of vision and disfigurement together. The evidence is to the effect that the pupil has been enlarged, and that the eye is not capable of contracting as it should. It has lost the faculty of accommodation, the automatic contraction and dilatation in light and darkness. This condition was produced by the hemorrhage he suffered in his eye, and no operation can help it. The medical experts who testified in this case are not in accord. Plaintiff's experts state that the plaintiff has lost about one-third of the usefulness of the injured eye; they also state that this cannot be corrected by the wearing of glasses. Yet defendant's expert testified that it can be corrected so as to bring the vision to normal. The experts testified that the vision of plaintiff is that of a person of 40 years of age, plaintiff being only 22 years old, or the loss of vision of 15 or 10 per cent. The enlargement of the pupil is perceptible and noticeable; undoubtedly it will cause him some embarrassment, but to what extent, there is no evidence. We are of the opinion that an award of $1,000 for both of these claims is just and reasonable.

The next and last item is for the loss of earning power and capacity. Plaintiff was hired by Phelan for the baseball season of 1935 at a salary of $60 per month to play ball on the Alexandria Ball Club. He was not rehired for the season of 1936. Phelan gives as his reason the cause that plaintiff was not of major league timber. Plaintiff contends that he had a job of $135 per month as a semiprofessional ball player to play on the Bunkie Club. There is evidence to the effect that plaintiff was to get a job with some oil company as an oil field worker near Bunkie, and was to play ball at least once a week with the Bunkie Club. Phelan also testified that probably plaintiff could develop into a class "A", as the Texas League, player. His loss as a prospective professional ball player is rather too speculative. However, the accident has caused him some loss of earning capacity, and we feel that an award of $1,000 is just and reasonable.

We are therefore of the opinion that a total award of $2,500, plus $149.15 as medical and hospital fees, or a total of $2,649.-15, to be fair, adequate, and reasonable and more in line with our jurisprudence. The judgment will have to be amended.

For these reasons, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount from $3,649.15 to the sum of $2,-649.15; and, as thus amended, the judgment be affirmed. Cost of this appeal to be paid by plaintiff-appellant, all other costs to be paid by defendants.