HARDY, Judge.
This is an action for damages resulting from personal injuries sustained by plaintiff while a guest passenger in a car involved in an intersectional collision. Made defendants were the host driver, Arthur Branch, his liability insurer, New Hampshire Insurance Company, L. D. Malone, the driver, Waldrip Tire & Supply Company, Inc., the owner, and Zurich Insurance Company, the insurer of the other vehicle. From judgment in favor of defendants rejecting plaintiff’s demands he has appealed.
The accident occurred about 8:00 o’clock, A.M., on July 28, 1962, at the intersection of Gilbert Street and Pierremont Avenue in the City of Shreveport, which intersection was controlled by an electric traffic light. The Plymouth sedan operated by Arthur Branch, and in which plaintiff was a guest passenger, was moving south on Gilbert Street and a Dodge, three-ton, stake-body truck, loaded with cattle, was being driven by Malone east on Pierremont. At the time of the accident the hard surfaced streets were dry and there was no obstruction to visibility on the part of either driver. Gilbert Street is 25 feet 10 inches wide while Pierremont Avenue is 41 feet in width and accommodates four lanes of traffic. The impact between the front of the Dodge truck and the right side of the Plymouth automobile occurred in the northerly lane of eastbound traffic on Pierremont at a point just south of the center of the intersection with Gilbert.
Although plaintiff made specific charges of negligence against both Branch and Malone, the drivers of the respective vehicles involved, he testified that he remembered nothing about the occurrence of the accident, having been rendered unconscious by the force of the impact.
Each of the defendant drivers asserted that he entered the intersection in response to a favorable green light signal in his direction.
The district judge did not assign written reasons for judgment, but it is conceded by counsel for all parties that he based his judgment upon the conclusion that he was unable to determine whether either or both of the defendant drivers were guilty of any act of negligence which constituted a proximate cause of the collision. Unable to fix liability the district judge relied upon the opinion of this court in Demery v. Reliance Insurance Company, Inc. et al., 150 So.2d 44, and dismissed plaintiff’s claim on the ground that he had failed to establish his right to recover, by a preponderance of the evidence.
There can be no dispute as to the conclusion that this accident was the direct result of negligence of one of the two drivers in entering the intersection on a red light or by the negligence of one, or both, of the drivers in failing to maintain a proper lookout and have his vehicle under such control as would permit him to anticipate and avoid a collision.
*491 The testimony of the host driver, Branch, was that he was headed south on Gilbert Street and came to a stop some twelve feet north of the intersection because the red light of the traffic signal was showing in his direction; that he waited until the signal changed, whereupon he entered the intersection in response to the green light and proceeded at a speed of some IS miles per hour; that he observed the approach of the Dodge truck at what he described as a rapid rate of speed but was unable either to stop or to accelerate the speed of his car in time to avoid the collision. This testimony was substantially corroborated by one William Moore, who was the only eye witness to the accident not involved either as driver or passenger in one of the vehicles. Moore testified that he was also driving south on Gilbert; that he came to a stop immediately behind the Branch automobile, awaiting the change of the signal, and proceeded to follow the Branch car into the intersection on the green light signal. This witness further testified that he observed the approach of the truck from the west on Pierremont; that it was moving at a rapid rate of speed, with brakes squealing and the vehicle zig-zagging as it approached the intersection. Realizing the imminency of a collision, Moore testified that he put his car in reverse and backed a few feet, apparently just as the other vehicles collided.
On behalf of the Waldrip defendants the testimony of Malone, the driver, and his two companions, Jessie Turel and J. L. Harper, all of whom were seated in the cab of the Dodge truck, was introduced. These witnesses uniformly testified that the Dodge truck was moving at a speed of approximately 20 miles per hour; the signal at the intersection changed from red to green when the truck was some 100 to 150 feet west of the intersection; they observed the Branch automobile when the truck was about 50 feet from the intersection, at which time it appeared that the Branch car was about to stop in the center of the intersection; they entered the intersection and the Branch car moved in front of them; Malone applied his brakes and tried to turn to the right but was unable to avoid the collision.
The only physical circumstances, established by the testimony of the investigating police officers, which are of any pertinency, were that no evidences of skidmarks, indicating the application of brakes by the driver of either vehicle prior to the impact, were present; that the collision occurred just south of the center of the intersection, and that the Plymouth car was knocked forty feet, seven inches from the point of impact, coming to rest on the sidewalk neutral ground at the southeast corner of the intersection; while the Dodge truck stopped, headed southwest in the street near the southeast corner of the intersection.
Our first effort has been directed to the attempt to ascertain, upon the basis of the record before us, any preponderance of the evidence which would support a conclusion of negligence on the part of one or both of the drivers of the vehicles involved. In this effort we have failed, and repeated examination of the record serves only to sustain the conviction that negligence cannot be determined therefrom.
The directly opposed versions as to the occurrence of the accident, supported by the testimony of the respective parties defendant, cannot be reconciled, nor can we find any justification for according greater weight to one group of witnesses than to the other. All five of the eye witnesses who testified on trial are negroes. It is true that there are some discrepancies in the testimony of each of the witnesses but they are not of such magnitude or importance as would adversely affect credibility. It is also true that Malone, Turel and Harper, the occupants of the Dodge truck, were all employees of Waldrip, the owner of the truck, and were related by marriage, but these factors, aside from evidencing interest in the outcome of the litigation, were not sufficiently persuasive to tip the evenly balanced *492 scales against the acceptance of their testimony.
We are well aware of the action taken by the Supreme Court in Derouen v. American Employers Insurance Company, 240 La. 486, 123 So.2d 896, in which the identical question, that is, which motorist entered an intersection on the green light, was presented for determination. The court found as a fact that the proximate and efficient cause of the accident was the concurrent failure of both drivers to keep a proper lookout and have their vehicles under proper control. This conclusion resulted from the determination as expressed by the court that both drivers “ * * * allowed themselves to get too near the intersection before they looked to ascertain the color of the traffic light.”
The same solution is not available in the instant case. There is one significant difference in the cases resulting from the fact that in the Derouen case the traffic light was of the type which changed colors within a driving distance of one or two feet. Such is not true in the case before us where the light was of the semaphore type in which the change from green to red is preceded by a yellow caution signal.
If the testimony of Branch and his witness is to be believed, he stopped at the intersection awaiting the change of the traffic light and entered on a green signal. If the testimony of Waldrip and his witnesses is accepted, the light in his direction changed to green when he was from 100 to 150 feet distant, and, at 20 miles per hour, he had ample time to enter and clear the intersection before his passage was barred by the change to a red light.
Obviously, the opposed versions are irreconcilable, and, unfortunately, we can find no factors which would reasonably enable us to conclude that one outweighs the other. To adopt either story as truth would be to convict the opposed witnesses of perjury, which result is justified only in instances in which credibility is successfully impugned or the interpretation of the testimony is inescapable.
We do not find that the application of the principle of res ipsa loquitur is strenuously urged by counsel for any of the parties litigant. In any event, such application would not be appropriate under the facts of the instant case. The scholarly discussion of the doctrine of res ipsa loqui-tur and proof by inference by Professor Malone, IV LLR. 70, contains the following statement:
“A collision of two vehicles is not a proper accident for the application of r.es ipsa loquitur. In the absence of further proof it cannot be assumed that one driver, rather than the other, was negligent, nor is there any presumption that both were careless.”
Commenting on the Derouen case, cited supra, the same author, XXII LLR. 342, observed :
“The problem faced by the court was indeed difficult from a practical point of view, but the writer submits that it was completely foreign to any notion of res ipsa loquitur or any idea concerning the burden of proof. There was no unexplained accident involved.”
Having eliminated the possibility of determining negligence upon the basis of the evidence presented, and further having eliminated the applicability of the doctrine of res ipsa loquitur, we find it necessary to confront a somewhat complex, involved and uncertain legal question.
Counsel for plaintiff relies upon what he declares to be “ * * * the rule applicable to an innocent party damaged as a result of an intersectional collision * * citing Insurance Company of North America v. Gore (Orleans, 1958), 106 So.2d 471.
The so-called “rule” was enunciated in the opinion of the court in the Gore case as follows;
“We are dealing with a case where the property of an innocent party is dam *493 aged as a result of an accident between two automobiles, the owners and operators of which are made solidary defendants. Under such circumstances the burden of proof is upon each defendant to exculpate himself from negligence, and each must be deemed guilty of negligence per se in the absence of any showing to the contrary. Marquez v. Miller, La.App., 64 So.2d 526; Bonner v. Boudreaux, La.App., 8 So.2d 309; Armstrong v. New Orleans Public Service, Inc., La.App., 188 So. 189; Weddle v. Phelan, La.App., 177 So. 407.”
The Gore case was an action by plaintiff as a subrogated insurer for the recovery of the amount paid its insured, the owner of a building which had been damaged as the result of an intersectional automobile collision. Plaintiff impleaded as defendants Gore, the owner and operator of the automobile which actually ran into the building, and the owner, driver and liability insurer of the taxicab, the other vehicle involved. The trial court rendered judgment in favor of plaintiff against all defendants. Gore neither answered the suit nor appealed from the judgment, and the only issue presented on the appeal related to the liability of the owner, driver and insurer of the taxicab. Careful reading of the opinion fails to disclose any necessity for the enunciation of the above quoted “rule”, for the opinion carefully analyzes the testimony without any reference to the burden of proof and the conclusion reached was based upon the correction of what the appellate court regarded as a misconstruction of certain testimony which required the reversal of the judgment and rejection of plaintiff’s demands against the appellants. Under these circumstances we can only regard the pronouncement of the “rule” as mere surplusage.
Disregarding the intervening citations, the initial authority for the establishment of the “rule” appears to derive from the case of Weddle v. Phelan (First Circuit, 1937), 177 So. 407.
In the Weddle case the opinion of the court contained the following observation:
“The plaintiff in alleging and proving the happening of the accident under circumstances indicating that the accident would not have happened but for the negligence of either the bus driver or the truck driver, or both, had the right to rest on this prima facie showing of negligence, and it then became the duty of the drivers of the vehicles to exonerate themselves from the presumption, or inference, of negligence in the operation of their respective vehicles. Overstreet v. Ober et al., 14 La.App. 633, 130 So. 648; Hamburger v. Katz et al., 10 La.App. 215, 120 So. 391; Monkhouse v. Johns (La.App.), 142 So. 347; Lykiardopoulo v. New Orleans & C. R. Light & Power Co. et al., 127 La. 309, 53 So. 575, Ann.Cas. 1912A, 976; Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205.”
It is clear from a reading of the opinion that the court was concerned with the applicability of the doctrine of res ipsa loqui-tur, which it adopted and applied to the case. This conclusion was noted by Malone, IV LLR. 104, as being opposed to the weight of authority in Louisiana.
The authorities cited in the above noted extract from the opinion in the Weddle case do not justify either the formulation or acceptance of the broad “rule” relied upon.
We have examined the cases cited by the court in the Gore case, which arose subsequent to the Weddle case, and find it necessary to comment briefly. In the Armstrong case the court was again concerned with the presumption arising from the application of the doctrine of res ipsa loquitur which it held to be a presumption juris and not juris et de jure, and which was overcome by evidence that the accident resulted from the negligence of another party. It is also pertinent to observe that this case involved only one defendant. In the Bonner case the First Circuit re-affirmed its action *494 in the Weddle case, applying the doctrine of res ipsa loquitur, and again held that the doctrine applied.
The Marquez case was an action by plaintiff, as owner of a legally parked automobile, for damages sustained thereto. Named as defendants were Ledet, the employee-driver of an automobile involved in an in-tersectional collision, and Miller, his employer. Ledet did not answer the suit and judgment by default was rendered against him. The court found that plaintiff’s evidence established the occurrence of an in-tersectional collision between Ledet’s car and a truck, following which the Ledet car swerved into the rear of a parked automobile that was propelled into plaintiff’s vehicle, causing the damage for which plaintiff sought recovery. The court called attention to the fact that Miller offered no testimony in rebuttal of plaintiff’s evidence as to the occurrence of the accident. One of the defenses asserted by defendant was that plaintiff had failed to establish the negligent operation of the Ledet car, and, in disposing of this point the court said:
“It is usually negligence per se to strike a vehicle which is legally parked and, therefore, these facts reflect that plaintiff had made out a prima facie case and the burden of proof then shifted to the defendant to establish, if he could, by other competent evidence, facts which would show that the damage to plaintiff’s car was not caused as a result of the negligent operation of the Ledet vehicle.”
No authority was given by the court for its pronouncement that the accident resulted from “negligence per se”. We submit that, in reality, the court applied the doctrine of res ipsa loquitur. Plaintiff proved that he was free of negligence, and, by application of the principle, the burden then shifted to defendant to exculpate, himself from the inference of negligence resulting from the factual circumstances established by plaintiff.
Negligence per se is generally defined as being the violation of a public duty enjoined by law for the protection of person or property or as conduct, whether by commission or omission, which may be treated as negligence without proof of surrounding circumstances, either because it is in violation of statutory law or because it is palpably opposed to the dictates of common prudence. See Black’s Law Dictionary, 4th Edition, verbo “Negligence per se.”
Negligence per se is classified under the weight of authority as relating to the violation of a statute, ordinance, traffic law or regulation of administrative bodies. The rule in some jurisdictions holds that such violations are only evidence of negligence to be accepted or rejected by the jury or the court. Prosser on Torts, 2d Edition, Section 34, page 161.
The distinction between negligence and negligence per se lies in the method of ascertainment. Negligence must be determined upon the basis of the evidence while negligence per se results from the violation of a specific requirement of law. 28 Words and Phrases, Permanent Edition, 1963-64, P.P., verbo “Negligence per se.”
In Louisiana there is a wealth of authority relating to negligence per se resulting from the violation of traffic laws. Strangely enough, there appear to be two equally positive declarations on this point. According to the opinions in one line of cases it has been held that “* * * the law is well settled * * * ” and the principle has been firmly enunciated that the violation of a regulatory traffic law does not constitute negligence per se; Mellow Joy Coffee Co. v. Continental Cas. Co. (1st Circuit, 1953), 63 So.2d 888, quoting from Williams v. Pelican Creamery Co. (1st Circuit, 1947), 30 So.2d 574; and citing Bourgeois v. Longman (1st Cir., 1940, writs refused), 199 So. 142. Also see Hagaman v. Bankers Indemnity (Orleans, 1942), 7 So.2d 390, in which it was held that it is not negligence per se for motorists to drive on wrong side *495 of road but it is negligence to fail to move to the right on meeting other vehicles.
Just as positively in another line of cases the violation of a traffic law has been declared to be negligence per se; Crawley v. City of Monroe (2nd Circuit, 1946, writs denied), 26 So.2d 493; Muse v. East Texas Grocery Co. (2nd Circuit, 1942), 11 So.2d 250; Woodruff v. Stewart (2nd Circuit, 1942), 6 So.2d 796; Austin v. Baker-Lawhon & Ford (2nd Circuit, 1939, writs denied), 188 So. 416; Smith v. Texas & Pac. Ry. Co. (2nd Cir., 1939), 189 So. 316 (holding that the violation of a safety law is negligence per se); Fields v. Owens (2nd Circuit, 1939), 186 So. 849; Jacobs v. Brooks (2nd Circuit, 1938), 182 So. 349.
The violation of a safety ordinance was held to be negligence per se in Elfer v. Hibernia National Bank (Orleans, 1937), 174 So. 287.
In Scott v. Claiborne Electric Cooperative, Inc. (2nd Circuit, 1943), 13 So.2d 524, the court held that the action of defendant in the placing of a pole carrying uninsulated high voltage wires (though not in violation of any statutory law or ordinance)— “amounted to negligence per se.”
In Harrelson v. McCook (2nd Circuit, 1940, writs denied), 198 So. 532, the court held that the skidding of an automobile upon a highway was not negligence per se. (This case also held that a guest action against host alleging that the automobile was under the exclusive control of and driven by the host at the time it ran into a ditch was sufficient to bring the case within the rule of res ipsa loquitur, although the guest did not make specific allegations of negligence on the part of the host. See Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11; Lykiardopoulo v. New Orleans & C. R. Light & Power Co., 127 La. 309, 53 So. 575).
However, it is significant to note that in all cases holding that the violation of traffic laws or safety ordinances constitutes negligence per se, the courts have been meticulous in qualifying the effect of such definition by holding that even this character of negligence is not actionable unless it is a proximate cause of the resulting injury and damage. (Cases cited supra).
We are now confronted with a line of cases apparently stemming from the pronouncement of the court in the Weddle case, including the Marquez and Gore cases, all cited supra, and continued in Adams v. Spellman (4th Circuit, 1961), 130 So.2d 460; Equitable Fire & Marine Ins. Co. v. Allstate Insurance Co. (4th Circuit, 1962), 137 So.2d 366; Emmco Insurance Co. v. Liberty Mutual Insurance Co. (4th Circuit, 1962), 138 So.2d 822; and Jones v. Southern General Insurance Co. (3rd Circuit, 1963), 157 So.2d 335, all of which pronounce, in one form or another, the applicability of a rule of negligence per se to automobile collision cases involving injury to a third party. This asserted principle is now confidently relied upon as the established jurisprudence of this state. We regret that we cannot conform to this conclusion.
In our opinion, the ill-advised use of a so-called “rule” of negligence per se has been a judicially conceived but entirely unwarranted extension of the doctrine of res ipsa loquitur. We are unable to find any sound authority in this or other jurisdictions for such an extension of the doctrine. It is true, as a general principle in some instances, that the acts of two or more persons which produce injury to an innocent third party render them jointly and severally liable. But this is true only where the guilt of separate acts of negligence on the part of the several tort feasors has been established, although, admittedly, only the act of one could have produced the injury; 5 A.L.R.2d 98. The annotation cited relates specifically to the rare instances where injury has resulted from the negligent use of firearms.
The consideration of the issues presented is made somewhat more difficult than necessary by an apparent confusion of the doc *496 trines of res ipsa loquitur, negligence per se, presumption of negligence, inference of negligence, and prima facie negligence or want of ordinary care.
 It must be borne in mind that the so-called “rules”, by whatever name they are called, are rules of evidence. Understandably courts are zealous in their effort to protect the rights of innocent third parties which have been damaged by the negligence of others. But this zeal should not be misdirected to such an extent as to completely relieve the innocent party of the necessity for establishing negligence by a preponderance of the evidence. Appropriate to this observation is reference to the action of the Supreme Court in the Derouen case, supra. The court reversed the judgment of the trial court which had been affirmed by a majority of the Court of Appeal, but, in doing so, based its judgment on a finding of fact. Although not so denominated in the opinion of the Supreme Court, its conclusion was clearly predicated upon a finding of manifest, or at least reversible, error on the part of both the trial and the appellate courts. We think this approach was eminently correct.
Convincing support of our view is found in the opinion of Mr. Chief Justice Fournet in Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389. In reversing the judgment of the district court and its affirmance by the Court of Appeal the opinion declared:
“ * * * an accident due to a collision between two private vehicles is not, in the absence of further proof, a proper occasion for application of the rule [of res ipsa loquitur], since it is improper to assume that one driver rather than the other, was negligent, or to ignore the fact that the collision might have been caused by factors outside the control of either. It necessarily follows that the maxim is not appropriate where, from the nature of the facts, it is reasonable to assume that the actions of the defendant may have been caused by the negligence of another. In the case of Morales v. Employers’ Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated:
“ ‘It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked.’ ” (Emphasis supplied)
We are impressed with the belief that the adoption of the principle of negligence per se as a substitute for proof is not only unsupported by sound precedent but represents a very real probability of injustice by shifting the burden of proof from plaintiff to defendants. By analogy this procedure would be equivalent to a rule of criminal law which would require two or more accused to prove their innocence rather than requiring the state to prove guilt. If the rule is confirmed it will only be necessary for a guest passenger suing two or more defendants charged with negligence to testify that he remembers nothing about the occurrence of an accident.
What would happen in a case like the one before us if the plaintiff had chosen to sue only one of the alleged tort feasors ? Under such a circumstance the presumption of negligence per se could not even be asserted and evidence equivalent to that produced by either defendant in the instant case would serve to preponderate and justify the rejection of plaintiff’s demand.
In the case at bar the district judge was unable to determine which of the two defendants was guilty of negligence that was the proximate cause of the accident. One of the most cogent reasons advanced in support of the Manifest Error Rule is that the trial judge is better able to evaluate the *497 credibility of the witnesses and the weight of the testimony as presented, and, therefore, his conclusions should not be disregarded except in unusual instances. After our examination of the record we are unable to make the assertion, with any confidence whatsoever, that the district judge erred. Any judgment which we might render as against either or both of the defendants would, perforce, rest upon pure speculation, which nature of judicial determination we emphatically reject for the reasons stated in our opinion in Demery v. Reliance Insurance Co. et al. (2nd Circuit, 1963), 150 So.2d 44.
For the reasons assigned the judgment appealed from is affirmed at appellant’s cost.